[S. F. No. 4373. Department One.—November 18, 1907.]

## EMMA E. SALMON, et al., Respondents, v. P. F. RATHJENS, Appellant.

ACTION FOR DEATH—PARTIES PLAINTIFF—ALL HEIRS SHOULD JOIN IN ACTION BY HEIRS.—Under the statute of this state actions to recover damages for the death of a person should be brought either by the personal representatives of the deceased solely for the benefit of all his heirs or by *all* the heirs for their own benefit. The right of action in such a case being entirely statutory, the action must be brought in the names of the persons to whom the right is given by the statute. All the heirs should, therefore, join as plaintiffs in an action by heirs, and if the consent of any one who should be so joined cannot be obtained he may be made a defendant.

ID.—AMENDMENT TO ANSWER SHOWING OTHER HEIRS—REFUSAL OF AMENDMENT.—In such an action, where the complaint stated a cause of action upon the theory that the plaintiffs were the only heirs of the deceased, and the defendant, four months after filing his answer, went to trial without raising the issue that there were other heirs, the objection that all the heirs had not been made parties was waived; and it was not error for the court during the progress of the trial to refuse an amendment to the answer alleging on information and belief the existence of other heirs, so as to authorize the admission of evidence on that subject, when no showing was made in support of the application to amend, or as to why the objection had not been made earlier.

ID.—RECOVERY IN ONE ACTION A BAR TO SUBSEQUENT RECOVERY.—A recovery had against the defendant in such action would be a bar to a further recovery in a subsequent action by some other heir or heirs of whose existence the defendant had no knowledge at the time of the first action.

ID.—STAY OF PROCEEDING TO BRING IN HEIRS.—A motion in such action that all proceedings be stayed until the other heir or heirs were brought in as parties was properly denied, in the absence of a showing of the existence of any other heirs.

ID.—DAMAGES—EVIDENCE OF OTHER HEIRS.—The refusal to allow the defendant to show the existence of other heirs was without prejudice to him on the question as to the amount of damages. In such action damages are awarded in the aggregate, and the only possible effect of such evidence would be to enhance rather than to diminish the damages.

ID.—NEGLIGENCE—EVIDENCE OF CAUSE OF DEATH.—In an action to recover damages for a death alleged to have been caused by the negligence of the defendant, the evidence is reviewed and held sufficient to warrant the finding of the jury that the immediate cause of the death, to wit, purulent cerebral meningitis, was the direct result of the injuries received by the deceased from the negligent act of the defendant.

ID.—EXPERT WITNESS—EVIDENCE OF QUALIFICATIONS—HARMLESS ERROR. —A party producing an expert witness has the right to question him as to his experience in the particular matters concerning which he is to be examined, not only for the purpose of establishing the competency of the witness to the satisfaction of the court, but also for the purpose of making plain the strength of the witness's grounds of knowledge and the reason for trusting his belief. The refusal, however, to allow such questions asked of an expert medical witness called by the defendant will not warrant the reversal of a judgment against him, if under the circumstances of the case the evidence would have been of no practical importance and would not have added materially to the effect of the other evidence given on his behalf.

ID.—EVIDENCE OF INDIFFERENCE OF EMPLOYEE OF DEFENDANT.—Where an employee of the defendant through whose negligence the injury had occurred testified on behalf of the defendant as to certain events that had happened at the scene of the accident and after its occurrence, it was not error prejudicial to the defendant to permit him to testify on cross-examination that he had never made any inquiries as to the identity of the person injured, or as to who his people were or where they lived, and never saw him from the time he was hurt until he died.

ID.—CHARGES FOR UNPAID MEDICAL SERVICES—EVIDENCE OF INADMISSIBLE—CURE OF ERROR.—In an action by the heirs of a deceased to recover for his death, charges for medical and hospital services rendered him which had never been paid by them and for which they were not liable are not a proper element of damages. The error, however, in admitting evidence of such charges, offered by the plaintiffs over the objection of the defendant, is cured if the plaintiffs a short time after its admission themselves moved the court to strike it out, and their motion was denied at the request.

of the defendant, and again subsequently moved the court to strike it out, and that the jury be instructed to disregard it, to which the defendant again objected, whereupon the court stated that it had concluded to instruct the jury to disregard it.

ID.—OPINION OF PHYSICIAN AS TO EXTENT OF INJURIES.—Any error in refusing to allow a physician who treated the deceased immediately after he was injured, and who was called by the defendant to give his opinion as to whether the injuries were sufficient to cause death, was cured if the subsequent testimony of the witness substantially covered that matter.

ID.—EARNINGS OF DECEASED—HEARSAY.—Where one of the plaintiffs testifies directly on her examination-in-chief as to the earnings of the deceased and his expenditures for the household of which he and the plaintiff were members, it is not error to refuse a motion of the defendant made during cross-examination to strike out her testimony on the ground of hearsay, if the cross-examination fails to show that the knowledge of the witness was based entirely on any declarations made by the deceased or by any other person.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Monroe & Cornwall, John H. Dickinson, and C. H. Wilson, for Appellant.

M. S. Eisner, and Wolff & Hollzer, for Respondents.

ANGELLOTTI, J.—This is an action by two children of Moses Farmer, deceased, one of whom is a minor, for damages resulting to them from the death of said deceased, which is alleged to have been caused by the negligence of defendant. There was a jury trial resulting in a verdict for plaintiffs for forty-five hundred dollars, upon which judgment was entered. Defendant appeals from the judgment and from an order denying his motion for a new trial.

1. The first point made for reversal relates to the refusal of the trial court to allow defendant to amend his answer during the progress of the trial, and its refusal to allow certain questions asked one of the plaintiffs. The complaint was filed April 28, 1903. The allegation therein as to heirship of plaintiffs was as follows: "That the plaintiffs herein, Emma

E. Salmon and Lurline Farmer, are daughters of the said
Moses Farmer, deceased." Defendant, on June 4, 1903, demur-
red to this complaint for want of facts and on the further
ground "that there is a defect of parties plaintiff, in this,
that it appears from said complaint that there are heirs-at-law
of said deceased who are not made parties plaintiff herein."
This demurrer was overruled September 2, 1903. On October
2, 1903, the answer of defendant was filed. The answer con-
tained specific denials of the allegations of relationship and
heirship on the part of plaintiffs, but was silent upon the
proposition as to the existence of any other heir. The trial
commenced February 8, 1904. During the progress of the
trial, plaintiff Emma E. Salmon, a married woman, testified
on behalf of plaintiffs. She testified on direct examination
that she was a sister of her co-plaintiff Lurline Farmer, and
that deceased was their father. On cross-examination she was
asked, "Have you any sister besides Lurline Farmer?" This
was objected to as irrelevant and immaterial and not proper
cross-examination. Thereupon defendant asked leave to amend
the answer, by inserting therein allegations on information
and belief to the effect that plaintiffs are not the sole and
only heirs of the deceased, but that there is "another child,
or children or heirs" of deceased, the names of which and
their residences are unknown to defendant, that the omission
to make such unknown heir or heirs parties produces a defect
of parties plaintiff. The amendments offered contained a
statement "that the facts in this paragraph alleged on inform-
ation and belief were first known to him on this 9th day of
February, A. D. 1904." The proposed amendments were
signed by counsel for defendant, but do not appear from the
record to have been verified, and the record fails to indicate
that any other showing was made in support of the applica-
tion to amend. Plaintiffs objected to the amendment being
made at that time, and the court denied the application to
amend. Defendant then asked the witness several questions
relating to the matter, such as "Have you any sister besides
Lurline Farmer?" "Is there any child other than yourself
and Lurline Farmer now living, the daughters or sons of
Moses Farmer, deceased?" "Was there any such child at
the time of the filing of this suit?" and objections that the
matters sought to be elicited were incompetent, irrelevant, and

immaterial, and not within the issues of the case, were sustained. At the close of plaintiffs' case, it was stipulated that it should be considered that Emma E. Salmon was recalled as a witness for defendant, and that the same questions were again asked, the same objections made, and the same rulings given. Defendant then asked leave to amend his answer in the respect hereinbefore designated, making no other showing in support of his application. The court denied the application. Counsel for defendant then stated to the court that defendant is informed and believes that there are, and were at the time of the beginning of the action, heirs of deceased other than plaintiffs, and moved without further showing, that all proceedings be stayed and abated until such other heirs are made parties to the suit. The motion was denied by the court.

Our law relating to actions of this character undoubtedly contemplates that the action shall be brought either by the personal representatives of the deceased solely for the benefit of all the heirs (*Webster* v. *Norwegian M. Co.*, 137 Cal. 399, [92 Am. St. Rep. 181, 70 Pac. 276]), or by *all* the heirs for their own benefit. So far as heirs are concerned, a single joint cause of action is given. The language of our statute permits no other construction. The right of action in such a case being entirely statutory, the action must be brought in the names of the persons to whom the right is given by the statute. This is the universal rule. (See *Oates* v. *Union Pacific R. R.* 104 Mo. 514, [24 Am. St. Rep. 348, 16 S. W. 487]; *Usher* v. *West Jersey etc.*, 126 Pa. St. 206, [12 Am. St. Rep. 863, 17 Atl. 597]; *St. Louis etc.* v. *Needham*, 52 Fed. 371, [3 C. C. A. 129], 5 Ency. of Plead. & Prac. 851.) The cases from other states holding that the action may be maintained by one or more beneficiaries without joining all are based upon statutes construed as giving the right of action to one or more for the benefit of all, just as our own statute gives the right to the personal representatives of the deceased for the benefit of all of the heirs. (See *Collins* v. *East Tenn. etc. Co.*, 9 Heisk. (Tenn.) 841; *The Huntington etc. R. R.* v. *Decker*, 84 Pa. St. 419; *Pierce* v. *Conners*, 20 Colo. 178, [46 Am. St. Rep. 279, 37 Pac. 721].) An action by a portion only of the heirs is not the action authorized by our statute. All the heirs should, therefore, join as plaintiffs in an action by heirs, and if the

consent of any one who should be so joined cannot be obtained, he may be made a defendant. (Code Civ. Proc., sec. 382.) It would, therefore, seem that where all the heirs are not joined, and timely objection is made on that ground by a defendant, the action should be abated, or, at least, the other heirs should be made parties. It does not follow, however, that a reversal should be ordered because of any of the rulings of the trial court which we have set forth. The complaint stated a cause of action upon the theory that plaintiffs were the only heirs of deceased, just as completely as it would have done had it in terms alleged that plaintiffs were the only heirs. (*Knott* v. *McGilvray*, 124 Cal. 128, [56 Pac. 789].) No objection that there were other heirs was made by defendant in his answer, or until the trial had commenced and was in progress, which was more than four months after the filing of the answer. Up to that time, the defendant had rested without denial or objection in this regard, upon the theory that plaintiffs, if heirs at all, were the only heirs, as we are satisfied he had the right to do under the complaint, if he had no knowledge of the existence of any other alleged heir. (See concurring opinion of Henshaw, J., in *Daubert* v. *Western Meat Co.*, 139 Cal. 485, [96 Am. St. Rep. 154, 69 Pac. 297, 73 Pac. 244].) Even then, it was not made to appear to the court that there was any reasonable ground for supposing that there might be another heir, defendant contenting himself with his mere general information and belief statement that there were other heirs, as a basis for leave to so amend his answer as to authorize the institution of inquiry as to the existence of others who should have been joined as plaintiffs. Nothing warranting even the suspicion that there was any other heir had been disclosed by any evidence given on the trial, and the trial court was amply warranted by the circumstances, including the failure to make any showing in support of the application, in concluding that the sole object of the proposed amendment was to authorize the commencement of an inquiry by defendant in regard thereto, and that defendant then had no information in regard to the matter other than such as he had at the time of filing his answer. If this was the situation, defendant should have laid the foundation for his inquiry long before, by tendering the issue in his answer, and no excuse is made for his failure to do so. By his failure

to so make the objection that all the heirs of deceased had not been made parties, he had waived it (Code Civ. Proc., sec. 434), and no reason is apparent why such waiver should be allowed to be withdrawn after the case had come to trial upon the issues made by the pleadings. A different question might be presented if it had appeared that the proposed amendment was essential to the protection of any substantial right of defendant, and there had been a reasonable showing why the objection had not been made earlier. As we have seen, no such showing was made, and we are satisfied that defendant could not be subjected to a second recovery in a subsequent action by some other heir or heirs of whose existence he had no knowledge at the time of this action. (See *Daubert* v. *Western Meat Co.,* 139 Cal. 480, [96 Am. St. Rep. 154, 69 Pac. 297, 73 Pac. 244].) An application to amend made during the progress of a trial is addressed to the sound discretion of the trial court, and the action of the trial court will not be disturbed on appeal unless an abuse of discretion clearly appears. Under the circumstances here appearing, there was no abuse of discretion.

The motion that all proceedings be stayed until the other heir or heirs were brought in as parties was, of course, properly denied, in the absence of a showing of the existence of any such heir or heirs.

Under the issues made by the pleadings, unless the questions asked plaintiff Emma E. Salmon as to the existence of other children were material to the question of amount of damage, we cannot see that the court erred in sustaining objections thereto. That claim is now made by learned counsel for defendant, although no such claim appears to have been made in the trial court at the time the questions were asked. It is urged that it was proper to show that deceased expended a portion of his earnings on account of other children, thus diminishing the amount of damage to these plaintiffs. If this was the object of counsel in asking the questions, they should have so informed the court, for the questions themselves indicated no such purpose, and the object sought could only have been attained by subsequent and different questions. The action, however, was necessarily for the aggregate damage to all the heirs of the deceased. Our law allows but a single action in such cases, and in that action

the damage to all heirs is recoverable. So far, therefore, as the question of damage is concerned, the only possible effect of answers showing the existence of other children would be to enhance rather than to diminish the damage. They could not diminish the damage, but they might possibly enhance it by showing the loss to such other children of services on the part of deceased having a pecuniary value. We cannot see that the court erred to the prejudice of defendant in sustaining the objections to the questions.

2. On December 24, 1902, the deceased, while crossing Howard Street at the corner of Eighth Street, was run into by a runaway horse attached to a buggy, belonging to defendant, and knocked down and injured. It is not questioned here that the runaway occurred by reason of the negligence of defendant's employee, who was using the horse and buggy in the course of his employment, and who had left the horse standing, without being hitched, in front of a house where he was making a delivery for defendant. Plaintiffs' claim was that the injuries there received by deceased were the cause of his death. The verdict of the jury in favor of plaintiffs was a finding in accord with this claim. The contention that the evidence was insufficient to support such a conclusion cannot be upheld. The deceased was sixty-three years of age, apparently in good health, was never sick, and attended to his business every day. There was evidence that he was hit by a front wheel of the buggy, knocked several feet and run over by the wheels, that his face was badly bruised, and a leg injured, and that blood appeared to be coming from his mouth and one ear. He was immediately taken to the receiving hospital, and thence, on the same day, to Mt. Zion Hospital, where he remained under treatment until January 21, 1903. On the last named day he was taken to a private hospital, where he remained under treatment until February 14, 1903, when he died. An autopsy was held. The only evidence as to the immediate cause of death was that of the attending physician, Dr. Rosenstirn, whose conclusion was based entirely upon what he saw and ascertained at the autopsy. He testified that the deceased died from purulent cerebral meningitis, or in other words, a suppurated inflammation of the membranes covering the brain. He further testified that the autopsy disclosed an incised wound on the "left side of the knee joint"

in which was some gauze, and a wound over one of the eyes that was not entirely healed, and which was surfaced with proud flesh. In response to a hypothetical question, embracing the disclosures of the autopsy as testified to by him, and the facts already stated as to the injuries received at the time of the accident and the subsequent treatment and death, he testified substantially that the injuries were certainly sufficient to cause death, and the history of the case would indicate that the inflammation of the brain causing the death was caused by such injuries. Opposed to this was the testimony of four experts, who testified that they could not say from the history of the case disclosed by the hypothetical question that the inflammation of the brain was due to the injuries. One of them testified that he did not think such injuries would cause such a result, but would not say positively that they did not. They generally agreed that they might, but that such a result was very unusual. It appears from all the evidence that such an inflammation may be due to a great variety of causes. It may come from an injury to the head, or may be due to germs from any distant wound which has become infected, or to a disease of the ear, nose, or throat, or it may follow pneumonia or tuberculosis, or it may be the direct effect of the infectious disease sometimes called cerebrospinal meningitis, and sometimes spotted fever, which has been epidemic in some parts of the country. There is absolutely nothing in the evidence to indicate the existence of any cause for the inflammation of the brain other than the injuries received by deceased from the runaway. The effect of the evidence of defendant's experts is that such injuries might possibly have produced such a result, and the positive evidence of plaintiffs' expert is that the history of the case indicated that they did produce that result. In the absence of any other sufficient cause appearing to exist, such appears to be the reasonable conclusion in the light of the facts. We certainly would not be justified in holding that there was no sufficient basis for a conclusion to that effect on the part of the jury.

3. Dr. Carson, an expert witness for defendant, testified without other showing of his qualifications than that he had been a physician since the year 1901, and was practicing at the Southern Pacific Hospital. He testified that he could not

say from the facts stated in the hypothetical question that the meningitis came from the injuries, or that there was infection in the knee wound or head wound, and that infection causing meningitis ought not to have resulted from either of such wounds. He further testified that he had never seen such a result from such injuries to the head or knee. He was then asked: "What experience have you had with head injuries?" "What experience have you had with knee injuries?" Objections to these questions by plaintiffs, on the ground of incompetency, irrelevancy, and immateriality, were sustained.

There can be no doubt that a party producing an expert witness has the right to question him as to his experience in the particular matters concerning which he is to be examined, not only for the purpose of establishing the competency of the witness to the satisfaction of the court, but also for the purpose of making plain the strength of the witness's grounds of knowledge and the reason for trusting his belief. Although one holding a license to practice medicine and surgery may, by reason of that fact alone, be sufficiently an expert to testify as to the probable effect of certain injuries, the fact that he has had unusually great practical experience in the particular matter as to which he testifies would undoubtedly add somewhat to the weight of his testimony, and it is a legitimate and proper method of strengthening his testimony, one tending to the doing of substantial justice. (See Wigmore on Evidence, secs. 562, 655.) The objections to the questions should have been overruled. We are of the opinion, however, that the matter was not of sufficient importance to warrant a reversal. The effect of all the evidence in the case was to plainly show that cerebral inflammation could be caused by the injuries so long after their infliction (fifty-two days), only by reason of some infection of the wounds and the transmission of the germs to the brain, and that this was a very rare occurrence where the wounds were properly cared for. The mere fact that the witness had during his two or three years' practice seen many cases of such injuries, while technically admissible in evidence, was, under the circumstances, of no practical importance, and would not have added materially to the effect of the evidence given on behalf of the defendant. It is to be observed, in this connection, that

the question was limited to head and knee injuries. There was no good reason for such limitation. The theory being that such inflammation may result from an infected wound on any part of the body, practical experience with wounds generally, wherever situate, was the matter to be inquired into in this connection, and answers to the limited questions asked the witness would not have fully covered the matter, and would not have been as important in the case as answers to general questions relative to wounds wherever situated.

4. The employee of defendant through whose negligence the runaway occurred, testified on behalf of defendant. He said that after capturing the runaway horse, he drove back to the scene of the accident, and was there told that "the man was more scared than injured," and that he remained around there until the ambulance came and took him away. On cross-examination he was asked whether he ever made any inquiries as to who the man was that was hurt, who his people were, or where they lived, and whether he ever saw the man from the time he was hurt until he died, and, over proper objections, answered these questions in the negative. It may be conceded that there was nothing in the evidence given on direct examination that would render this proper cross-examination, and certainly failure on the part of the employee to make subsequent inquiry as to the condition of a person injured by his negligence, or as to his relatives, or the place where they lived, or his failure to subsequently visit the injured person, was not a matter relevant to any issue in the case, or chargeable in any way against the employer. But it is inconceivable that this testimony could have operated to the prejudice of defendant. It at most tended to show an indifference subsequent to the accident *on the part of the employeee* to the consequences following the injuries that had been inflicted by reason of his alleged negligence, and in no degree reflected on the defendant or strengthened the case of plaintiffs. The situation is very different from that presented in *Lissak* v. *Crocker Estate Co.,* 119 Cal. 444, [51 Pac. 688], where a subsequent declaration of an employee improperly admitted was of the character tending to charge the defendant with negligence, and also from the situation presented in *Smith* v. *Westerfield,* 88 Cal. 382, [26 Pac. 206], where incompetent evidence bearing directly on the

main point in issue was erroneously received. It is too well settled to require discussion that a judgment will not be reversed on account of an error, where it is apparent that no substantial right of the appellant could have been prejudicially affected thereby.

5. Dr. Rosenstirn testified for plaintiffs, that a reasonable charge for the medical services rendered by him to the deceased was five hundred dollars, and that he thought the charges for the hospital services would be one hundred and fifty dollars or two hundred dollars. This testimony came in without objection. On cross-examination he testified that none of these charges had been paid, and that he did not know the amount charged against deceased at the hospital. Defendant then moved that the testimony as to the fees and hospital bill be stricken out on the ground that they had not been paid, and that no liability on the part of plaintiffs to pay them had been shown. The motion was denied, and this ruling of the court is assigned as error on this appeal. We have no doubt that the evidence was improper. It may be doubted whether in an action of this character money expended in medical or surgical treatment of the deceased can ever be a proper element of damage. However this may be, certainly plaintiffs cannot recover for such charges where they have never been paid by them and plaintiffs are in no way liable therefor and have incurred no loss on account thereof.

Defendant is, however, precluded from urging this error as a ground for reversal. Before closing their case, plaintiffs themselves moved the court that the evidence be stricken out. Defendant objected thereto, saying: "We do not consent to that. The evidence is before the jury, and it cannot be withdrawn." The court thereupon denied the motion. Subsequently, plaintiffs again moved that the evidence be stricken out, and that the jury be instructed to disregard the same. Defendant again objected. The court then stated that it had concluded to instruct the jury to disregard the testimony, and defendant excepted. These objections of the defendant constituted an effectual waiver of the error of the court. (*Kahn* v. *Triest-Rosenberg Cap Co.*, 139 Cal. 340, [73 Pac. 164]; *Mitchell* v. *Davis*, 23 Cal. 384.) The fact that some little time intervened between the denial of defendant's

motion and the subsequent motions of plaintiffs (how much does not appear) does not materially differentiate this case from those cited.

6. Dr. Boskowitz, the emergency surgeon at the Central Emergency Hospital when the deceased was brought there on December 24, 1902, testified for defendant. He stated that he then examined the deceased, and observed injuries from which he was suffering. He was then asked: "Will you state to the court and jury whether or not in your opinion the injuries that you then found said Moses Farmer to be suffering from were sufficient to cause death?" An objection to this question was sustained.

It may be conceded for the purposes of this decision that the witness was not disqualified from testifying by reason of subdivision 4 of section 1881 of the Code of Civil Procedure, and that the question was proper. The effect of the subsequent testimony of the witness was to substantially cover the matter, and defendant could not have been prejudiced by the ruling. There was no conflict in the evidence as to the nature of the injuries received by deceased, and the hypothetical questions asked the witnesses by plaintiffs and defendant, stating the injuries and the history of the case, were in all substantial respects the same. Dr. Boskowitz was asked this question, and answered: "I don't think that those injuries would cause death." For all practical purposes, this, together with his subsequent testimony in support of his opinion, was, under the circumstances, a complete answer to the question objected to.

7. Complaint is made because of the court's refusal to give a requested instruction as to the duty of a pedestrian entering upon a street-crossing. We are satisfied that, under the facts of this case, the requested instruction had no proper application.

8. We see no ground for reversal in the denial of the motion made during cross-examination of Mrs. Salmon, to strike out on the ground that it was hearsay—all of her testimony—as to the earnings of the deceased, and his expenditures for provisions for the household of which he, Mrs. Salmon, her husband, and her sister were the members. Her only testimony as to earnings and expenditures on direct examination was as follows: "My father took care of and supported.

my sister, and also assisted in my support. . . . He would sometimes earn two dollars a day and sometimes three dollars. When he was working, he would purchase the groceries, meats and necessaries of life; when my husband worked, he would purchase them. My father was good to me and to my sister. He spent his evenings at home, and from the time my sister was born, she lived with my father and he provided for her schooling and education." The cross-examination disclosed no reason for holding that the knowledge of the witness was, as to any of this testimony, based entirely on any declarations made to her by deceased or any other person.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.