[Civ. No. 3719. Third Appellate District.—March 1, 1929.]

ELATERITE VARNISH AND RUBBER CO. (a Corporation), Respondent, v. CHAMBERLIN METAL WEATHER STRIP CO. (a Corporation), Appellant.

Lee Utley for Appellant.

Ernest B. Coil for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendant for the sum of $645.65, the balance alleged to be due from the defendant to the plaintiff for goods, wares, and merchandise sold and delivered by the plaintiff to the defendant at the latter's special instance and request. The defendant's answer admitted the purchase as alleged by the plaintiff, but as a defense to the action set forth a cross-complaint by which it sought to recover from the plaintiff the sum of $3,166.88.

Before taking up the consideration of the questions presented by this appeal it may be well to recite a few facts shown by the record, which, to some extent, may disprove the usual charge that courts are responsible for delays in litigation.

The transcript on appeal was filed on July 6, 1926. The appellant's opening brief was served and filed on the twenty-fifth day of August, 1926. This brief consisted of three and one-half pages of printed matter. The respondent's brief, consisting of fourteen pages, was filed on December 1, 1928, just two years, three months and seven days after the receipt of a three and one-half page brief.

At the trial of the action the plaintiff objected to any testimony which could be used to support the defendant's cross-complaint, on the ground that it did not state a cause of action. The objection being sustained, the defendant asked and was granted leave to file an amendment to its cross-complaint. Upon the filing of this amendment, the plaintiff demurred thereto, specially, raising the points which we will hereafter consider. This demurrer was sustained and the defendant denied the privilege of filing a further amendment to its answer, or further amended cross-complaint. The record shows that the complaint in this action was filed in April, 1924; that the defendant's answer and cross-complaint were filed on the twenty-fourth day of April, 1924, and that the action came on for trial on the second day of November, 1925. It is urged that the court abused its discretion in denying the appellant the privilege of filing a further amendment to its cross-complaint. The time elapsing between the beginning of the action, or even after the filing by the defendant of its answer and cross-complaint, until the day of trial, covering, as it did, a trifle over one year and a half, certainly afforded the appellant ample opportunity to study its pleadings and determine therefrom whether a cause of action was stated, and time enough to enable the appellant to be prepared with a good and sufficient answer if the facts existed to warrant the same, without causing a delay of the trial when the cause was called for hearing. A consideration of these facts is necessary in determining whether the court did abuse its discretion. While under section 473 of the Code of Civil Procedure amendments to pleadings are

favored, it is likewise true that the allowance or disallowance of an amendment during the course of a trial is within the sound discretion of the trial court, and its rulings will not be disturbed unless such discretion has been abused. (*Manha* v. *Union Fertilizer Co.*, 151 Cal. 581 [91 Pac. 393]; *Salmon* v. *Rathjens*, 152 Cal. 290 [92 Pac. 733].) Other cases might be cited, but these illustrate the rule. Considering the time elapsing between the filing of the pleadings and the time of trial we cannot say that the court abused its discretion. After having given the appellant an opportunity to amend its pleadings, it denied further time for it so to do when the application was made during the course of the trial.

It appears from the record that the plaintiff was engaged in furnishing a certain water-proofing compound bearing the name of the plaintiff in this action, to wit, "Elaterite"; that the defendant, or rather, the assignor of the defendant, made a proposition to the appellant, in writing, giving it the exclusive sales right to the territory included within the states of California, Washington, Oregon, Arizona, Nevada, and New Mexico; that the defendant was to act in distributing said compound; that the plaintiff was to fill all orders sent to it by the defendant, and if orders were sent to the plaintiff by others, within the territory named, the defendant was to receive a certain compensation therefor; that all the materials supplied should bear the joint label of both the plaintiff and defendant; that the plaintiff should carry in stock, or be prepared to furnish on reasonable notice, such quantity of the water-proofing compound as should be required to fill all orders; that the water-proofing compound should be of uniform standard in materials and proofing, the solid matter to be refined "Elaterite," one hundred per cent commercially pure, cut with mineral turpentine as per samples submitted for each grade; that the defendant would use its best efforts in the publicity and sale of the products under such trade brand as it might elect, provided, always, that the word "Elaterite" should be a part of said brand, and in all advertising and sales the plaintiff, as the manufacturer, should be mentioned. The proposition submitted by the assignor of the defendant contains other specifications, not material to be set forth herein, was accepted by the plaintiff and became the agreement between the plaintiff and the de-

fendant in this action, or at least became the writing evidencing the relationship between the parties hereto.

After admitting the purchase of materials as alleged by the plaintiff in its complaint, the defendant, by way of cross-complaint, alleged, after reciting a portion of the writing which we have referred to, as follows: "That the design of said 'Elaterite' compound was to have various bonding purposes, and for water-proofing, as to stone, wood, plaster and other substances. That at the time of entering into said contract it was agreed that said compound should be used by the defendant for said purposes in supplying the market and any orders that the defendant might procure from customers or for whom work was done by the defendant in the use of said 'Elaterite' compound. That the plaintiff represented to the defendant and agreed in said contract that all of said 'Elaterite' should be commercially pure and fit for the purposes designed and as hereinbefore described in said original contract." The defendant then further alleges: "That none of the materials, to the extent as hereinafter defined, was water-proofing compound of uniform standard in materials and proofing, and that the solid matter in said compound was not refined 'Elaterite,' neither 100 per cent or at all commercially pure; that the same was not cut with mineral turpentine, and that the material furnished to this defendant was not according to the samples furnished, in any particular; that the same was faulty and defective, and unfit for the uses hereinbefore referred to, and that the defendant attempted to use the same according to the directions and conditions imposed in said contract, but that the reasonably attempted use of the same did not furnish, or result in any water-proofing as to said material, nor did it result in any compound of said materials with various substances, and was wholly unfit for the uses represented to the defendant, by reason of being defective, unfit and incapable of use in the matters and in the regard referred to. That by reason of the 'Elaterite' and the water-proofing compound being defective and unfit for use, which was delivered to this defendant, the defendant was caused to undergo unnecessary expense of the replacing of faulty material and of relaying and replacing all said defective material furnished by the plaintiff in and to the following extent and in the amounts named for each person as hereinafter described." The com-

plaint then sets forth a table, giving the name, expense, labor, and material. One example will do for the whole table:

"Name                        Expense   Labor   Material
"Chambers,   815 3rd Ave.      .10      5.40     2.00"

A mere reading of the cross-complaint as amended shows that it fails to state a cause of action in many particulars. It appears therefrom that the plaintiff was the manufacturer of the compound, and, therefore, the provision of section 1770 of the Civil Code applies: This section reads: "One who manufactures an article under an order, for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." Section 3313 of the same code reads: "The detriment caused by the breach of a warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had at the time to which the warranty referred, if it had been complied with, over its actual value at the time." The cross-complaint is entirely silent as to any facts which would bring the cause within the provisions of section 3313, just quoted. Turning to the writing which constituted the agreement between the parties, we find that paragraph 7 reads: "You are to furnish me, within a reasonable time, technical data on the above products in support of such claims as you make for them." The cross-complaint does not set forth a single fact showing the claims made by the plaintiff as to the product in question. There is nothing showing any data whatever furnished by the plaintiff as to the uses of the compound, as to how it should be applied, or what it would be. Nor is there anything in the written agreement relative to work to be performed by the defendant, other than acting as a distributor of the compound. There is nothing in the cross-complaint showing in what particular the material furnished differed from the samples supplied the defendant by the plaintiff. The allegation simply reads: "That the material furnished to this defendant was not according to the samples furnished, in any particular." This is only a conclusion and is not a statement of any fact.

As to the expense alleged by the defendant to have been incurred in relaying material, etc., the cross-complaint is silent as to any particulars in which the material furnished by the plaintiff was faulty or defective; nor is there any alle-

gation showing that the material furnished by the plaintiff was used in the manner, or applied in the manner as directed by the plaintiff, to render its use effective; nor is there anything in the cross-complaint from which it can be determined in what manner the compound was applied. All there is in the cross-complaint is the conclusion that the pleader "reasonably attempted to use the same."

There being no facts alleged in the cross-complaint showing in what particulars, if any, the goods sold by the plaintiff to the defendant differed from the samples furnished, section 1766 of the Civil Code has no application. Nor are there any facts alleged in the cross-complaint showing that the goods furnished were not sound and merchantable. Practically all the cross-complaint contains is the general conclusion of the pleader. Whether a cause of action for damages exists in favor of the defendant as against the plaintiff by reason of any representation as to the value and use of the compound, cannot be determined from the pleading from the further fact that the cross-complaint is silent as to any directions given by the plaintiff or data given by the plaintiff as to the manner in which the compound should be used, and also, the cross-complaint is silent as to whether the attempted use of said compound was made according to any directions given by the plaintiff; nor is there anything in the cross-complaint showing in what manner any of the work was performed or materials used that had to be reperformed or replaced, as alleged in the cross-complaint. In all these particulars the cross-complaint is uncertain and unintelligible as an action for damages, separate and distinct from the provisions of the Civil Code to which we have referred.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.