(Nos. 5544, 5616.  January 30, 1931.)

MARY E. HARTMAN and HAROLD E. HARTMAN, Respondents, v. GAS DOME OIL COMPANY, a Corporation, A. BEVERLY HOWARD and FRIEDA MAXWELL, Appellants.

[295 Pac. 998.]

James R. Bothwell and W. Orr Chapman, for Appellant Maxwell.

J. W. Porter and J. W. Taylor, for Respondents.

LEE, C. J.—Mary E. Hartman and Harold E. Hartman, plaintiffs and respondents, respectively the widow and son of Frank M. Hartman, deceased, brought this suit against Gas Dome Oil Company, a corporation, A. Beverly Howard and Frieda Maxwell to recover damages for decedent's death alleged to have been caused by the carelessness and negligence of the said defendants. The complaint charged that defendant corporation was organized for the purpose of prospecting for and developing oil-wells; that defendant Howard was president, and defendant Maxwell, secretary and treasurer, and as such were in charge and control of the affairs of said corporation and by it were engaged and employed to sell, and were in the business of selling, shares of its capital stock; that for their own use and the use of the corporation and, "in order to enhance the sale of stock by themselves in said corporation," they erected or caused to be erected over a certain well called the "Medbury Well" a contrivance commonly known as a gas-trap to conserve natural gas accumulating therein, it being alleged that said trap was "dangerous and hazardous to life and limb by reason of the danger of explosion of said accumulated gas, which fact was well known to defendants." It was further recited that defendants, Howard and Maxwell, on or about December 14, 1927, in pursuance of their business of selling capital stock as aforesaid, "visited plaintiff, Mary E. Hartman, and her husband, Frank M. Hartman, at their residence in Glenns Ferry, Idaho, and solicited, requested, and persuaded said plaintiff and Frank M. Hartman to visit said Medbury well with the intent and purpose of thereby inducing said Frank M. Hartman to purchase stock in said corporation" and that said defendants in showing the Hartmans the well and gas-trap "carelessly, negligently, and well

knowing the danger thereof,'' turned the stop-cock, permitting the gas to escape from the end of the pipe and lighted a match and set fire to said gas, whereupon the gas ''exploded with terrific force, blowing a portion of said gas-trap on and against the body of said Frank M. Hartman, fatally wounding him, etc.'' All material allegations were denied by defendant Maxwell. Trial resulted in a verdict for respondents, and from the ensuing judgment as well as a subsequent order denying her a new trial the defendant Maxwell has appealed.

Multitudinous errors and insufficiencies of evidence are specified, the main contention being that the record is devoid of all evidence supporting any theory of appellant Maxwell's liability. It is vehemently urged that there is no whit of evidence that she was authorized to act in any manner for the company; that she ever sold or attempted to sell a share of stock; that she ever urged the deceased to visit the Medbury well or that she had anything to do with the arrangement or maintenance of the gas-trap, had knowledge of its dangerous nature or took any part in lighting the gas that exploded. Upon these facts, or rather the absence of them, appellant predicates the proposition that the carelessness and negligence of defendant, Howard, at the well cannot be imputed to her, since, to be participants in a joint adventure, there must be a community of interests and each have a voice in control and management.

A careful examination of the record discloses that defendant Howard and appellant Maxwell, respectively president and secretary and treasurer of the oil company, were as far as known the only officers of the company in the vicinity. What was visibly done in the company's interest was done by them or at their instance: they were busied in securing leases and visiting the well with others for demonstration. Appellant, Maxwell, had at different times familiarized herself with the gas-trap, and had ''fried eggs on there and boiled water.'' She knew the crude condition of it and ought to have known that the contraption was dangerous, for had she not on the fatal trip talked to respondent, Mary

Hartman, "about the well all the way along,—about oil"? The latter related: " . . . . she was trying to explain to me about it and everything; she said she had studied up on it, but I told her I hadn't, that I never studied anything like that and didn't understand it; and she said she had been studying it quite a little bit and that she knew quite a little bit about it." Defendant, Howard, had known for a long time that the trap was dangerous and had formerly exploded. He had sold Frank Hartman some stock. In August, he had come to respondents' home, talked oil, selling shares, and "wanted us to come up and see the well." In December, "about the coldest day of the winter," he went in company with appellant, Maxwell, to the Hartman home, where he proposed a visit to the well: " . . . . he wanted us to go, both of us." Appellant, Maxwell, lent her insistence, though be it, Mrs. Hartman demurred on account of the weather and her immediate bread-baking. Howard suggested: "Let the boy bake it." Appellant, Maxwell, joined in with: "The boy can bake it." Stating that they had no matches at the well, appellant, Maxwell, asked Mrs. Hartman for some, and was given a handful, which she transferred to Howard. Arrived at the well, successive lightings of the gas by Howard resulted in the explosion complained of.

According to these facts, it would not appear that the question of imputed negligence is involved. Here were two people at home on a cold day, busied with domestic duties. Two other folk, on anything but pleasure bent, for some mutual purpose, whatever it was, persuaded this old couple, one seventy-three and the other sixty-eight, to drive twelve miles in "a terribly cold wind," to examine and experiment with a gas-well. To the Hartman home they had come with this avowed object.

Among those acquainted with oil and gas operations, it is a matter of general knowledge that gas-traps as originally constructed are dangerous. The trap at the well had lost the upper barrel with the small gas jet, leaving only the lower barrel with an opening in the pipe much larger, a con-

dition of increased hazard. Manipulating such a dangerous instrumentality, both defendant Howard and appellant were under obligation to reasonably inform themselves of its peril to others: that they did not anticipate resultant injury is no excuse. (20 R. C. L. 15; 29 Cyc. 431, par. 2.) Injury having resulted from their negligence, either actual or constructive, they were jointly and severally liable for the damage. (*Brose v. Twin Falls Land & Water Co.*, 24 Ida. 266, 133 Pac. 673, 46 L. R. A., N. S., 1187.) The record shows beyond peradventure that each was actively aiding, abetting and countenancing the acts of the other.

Over appellant's objection, evidence was admitted that one Stein, a stepson of the deceased, had advanced hospital, doctor's and funeral expenses in the sum of $589. Inasmuch as this is a suit brought by the heirs, there can be no recovery of such disbursements, unless the plaintiffs have paid them or undertaken to pay them by contract express or implied: they are properly claims against decedent's estate. (*Jutila v. Frye*, 8 Fed. (2d) 608; *Salmon v. Rathjens*, 152 Cal. 290, 92 Pac. 733; *Regan v. Davis*, 290 Pa. 167, 54 A. L. R. 1073, 138 Atl. 751.) Recognizing the liability of the estate, it appears that Stein duly filed and secured allowance of his claim in the probate court. And while he testified at the time that no funds were available, there was no evidence produced that the estate was insolvent or did not in fact consist of appreciable property. The judgment will be modified by deducting this item. Otherwise, it is affirmed.

Costs to respondents.

Givens, Varian and McNaughton, JJ., and Koelsch, D. J., concur.

Petition for rehearing denied.