[Civ. No. 969. Fourth Appellate District.—August 10, 1933.]

S. C. ROSE et al., Respondents, v. SAN DIEGO ELECTRIC RAILWAY COMPANY (a Corporation) et al., Appellants.

Wright & McKee, C. M. Moore, Morrison, Hohfeld, Foerster, Shuman & Clark, V. F. Bennett and Edward J. Kelly for Appellants.

Adam Thompson and Renwick Thompson for Respondents.

MARKS, J.—S. C. Rose and Eleanor McIntosh were the husband and mother respectively of Margaret Rose. They brought this action for damages for the death of Margaret which resulted from injuries received in a collision between two motor vehicles on the twentieth day of December, 1930, in the intersection of Sigsbee and Newton Streets, both public thoroughfares in the city of San Diego.

The cause of action finds its source in the provisions of section 377 of the Code of Civil Procedure. One of the issuable facts is whether respondents are the only heirs at law of Margaret Rose, deceased.

The San Diego Electric Railway Company is a corporation operating a railway and motor bus transportation system in the city of San Diego as a common carrier of passengers. On the day of the accident Mrs. Rose was a passenger in one of its busses. James L. Owen, an employee of the railway company, was driving this bus northerly on Sigsbee Street. At about the same time Q. D. McClard was driving a small automobile in an easterly direction on Newton Street. Both vehicles were on their own right-hand sides of the streets. The automobile came into collision with the bus, striking it at about the center of its left-hand side just as the front end of the bus had reached a place north of the center line of Newton Street. The force of the impact threw Mrs. Rose onto the floor of the bus. Another woman was thrown on top of her. A few moments after the accident Mrs. Rose fainted. She was taken to her home, where she received medical attention for about two days when she was removed to a hospital, where she became progressively worse and died on January 9, 1931. An autopsy was performed and the autopsy surgeon found such a diseased condition of her kidneys that he attributed her death to lobar pneumonia, caused by septic poisoning and Bright's disease.

The attending physician of Mrs. Rose gave the progress of her illness substantially as follows: On the first examination there was a discoloration of her chest and such pain that it

indicated a broken rib, a discolored bruise on her back and another on her buttocks. Her symptoms and appearance on the day of her injuries did not indicate that death might follow. Her condition became rapidly worse and a form of insanity developed which the physicians called traumatic psychosis. This required that she be restrained on her bed. She would not eat and her food was given her by "forced feeding". She developed hypostatic pneumonia, which resulted in her death. In the opinion of one of her physicans this was caused by her being restrained and confined to one position on her bed. He testified as follows: "Q. Doctor, I want to ask a question or two. Tell me, Doctor, if I am correctly following your theory of the chain of circumstances and causation that resulted in the death of this woman: She had a trauma, that is, a blow; that blow was evidenced by certain bruises on her body. You also concluded that the blow caused an insanity, which you call a traumatic psychosis; that the insanity required or demanded that she be restrained in bed, and that you accordingly restrained her; and that the restraint, plus her lowered resistance, resulted in a pneumonia; and the pneumonia resulted in her death. A. That's exactly true." Another attending physician gave similar testimony.

The intersection in which the accident occurred was an obstructed one and it is admitted the speed limit there was fifteen miles per hour. There is evidence in the record that McClard drove his automobile at a speed between twenty and forty miles per hour in entering the intersection. There is also evidence that Owen drove the bus at a speed of between sixteen and twenty miles an hour on entering and crossing the intersection. McClard testified that he entered the intersection first at a speed of not more than fifteen miles per hour. Owen testified that he entered at fifteen or less miles per hour and that before he crossed the south line of the intersection he saw McClard at least fifty feet west of the west line of the intersection and that he did not again see the McClard automobile until the moment of impact. At that time the body of the bus completely blocked the south half of the intersection to east-bound traffic on Newton Street.

The jury returned a verdict in favor of respondents in the sum of $3,500. Upon the hearing of a motion for new trial it developed that respondents had failed to introduce

evidence that they were the only heirs of Mrs. Rose. The trial court granted the motion on this ground and the case was again set for trial. Evidence on this question was introduced and the cause again submitted for decision. The trial court found that the respondents were the only heirs of deceased and entered judgments in their favor in the sum of $3,500, the amount awarded by the jury.

McClard took an appeal separately from that taken by the San Diego Electric Railway Company and James L. Owen. He concedes that the evidence was conflicting on the question of the negligence of the drivers of both vehicles, but adopts the other specifications of error of his coappellants.

The San Diego Electric Railway Company and Owen urge that the evidence shows that the negligence of McClard was the sole and proximate cause of the injury and shows no negligence on the part of Owen; that the death of Mrs. Rose was not the proximate result of her injuries in the collision, but from bodily disease which the autopsy established had existed for a considerable time prior to the accident; that the trial court erred in granting a new trial on the question of heirship only; and, that the trial court erred in instructing the jury and in refusing instructions proposed by appellants.

The argument that the evidence conclusively shows that the accident was caused by the negligence of McClard and that there was no negligence proven on the part of Owen is met by the testimony of McClard that he entered the intersection first at a lawful rate of speed and the testimony of several witnesses that Owen drove the bus up to and into the intersection at an unlawful rate of speed. (Sec. 113, Cal. Vehicle Act.)

The jury and the trial court on motion for new trial adopted the theory that both drivers were negligent and that their concurrent negligence was the proximate or contributing cause of the injury.

Under this state of the record, the verdict and judgment being supported by some evidence, we are bound by the implied findings in the trial court even though we feel that were we sitting as trial judges we might have reached a contrary conclusion. (*Lutz* v. *Merchants Nat. Bank,* 179 Cal. 401 [177 Pac. 158]; *Treadwell* v. *Nickel,* 194 Cal 243 [228 Pac. 25]; *Rocha* v. *Garcia,* 203 Cal. 167 [263 Pac. 238].)

■ The testimony of the two attending physicians of deceased, to which we have referred, showed a causal connection between her injury in the accident and her death. It is true that this is strongly disputed by other evidence. This created a conflict, but we cannot reverse a judgment because of a conflict in the evidence.

We have examined all of the instructions given and all of those refused and can find no error committed by the trial judge.

The question of the trial court granting a new trial on the issue of heirship only and preserving the rest of the judgment presents a somewhat novel question upon which we have been cited to no California case deciding the precise point.

Section 657 of the Code of Civil Procedure provides that "a new trial may be granted on all or part of the issues". The question here presented is, then, whether in this case the sole heirship of respondents, this being denied in the answer, was so closely interwoven with the amount of damages awarded as to make a single issue in the case. If this be answered in the affirmative it will follow that the trial court should have granted a new trial on the question of heirship and damages preserving only the judgment on the concurrent negligence of appellants which it had the undoubted power to do. (*Pretzer* v. *California Transit Co.*, 211 Cal. 202 [294 Pac. 382].)

■ This action was brought under the provisions of section 377 of the Code of Civil Procedure. Under this section only one action can be brought for damages suffered by death and is a bar to other actions. It should be brought either by the personal representative of the deceased who acts in the capacity of a trustee for all the heirs in recovering a judgment, or by all of the heirs who may recover in one "lump sum" the total of the pecuniary loss suffered by each. In such a case the court should not attempt to apportion the loss of each heir in the judgment. This should be done in an appropriate proceeding. (*Munro* v. *Dredging etc. Co.*, 84 Cal. 515 [24 Pac. 303, 18 Am. St. Rep. 248]; *Hartigan* v. *Southern Pac. Co.*, 86 Cal. 142 [24 Pac. 851]; *Robinson* v. *Western etc. Gas Co.*, 184 Cal. 401 [194 Pac. 39]; *Estate of Riccomi*, 185 Cal. 458 [197 Pac. 97, 14 A. L. R. 509]; *Gilmore* v. *Los Angeles Ry. Corp.*, 211 Cal. 192 [295 Pac. 41].)

If an heir refuses to join as plaintiff he should be made a defendant. (*Salmon* v. *Rathjens,* 152 Cal. 290 [92 Pac. 733].) In *Roach* v. *Drew,* 72 Cal. App. 45, at 47 [236 Pac. 568, 569], it was said: " 'An action by a portion only of the heirs is not the action authorized by our statute. All the heirs should, therefore, join as plaintiffs in an action by the heirs, and if the consent of anyone who should be so joined cannot be obtained, he may be made a defendant.' (Citing cases.) 'While there can be but one action brought or one recovery had either by the personal representative of the deceased or the heirs, . . . and while the recovery in such an action should be a single "lump sum" for all, . . . the total recovery to be had is the aggregate of the pecuniary loss of each of the heirs who has suffered a pecuniary loss by reason of the death of the deceased. . . . It is obvious that the distribution among "heirs" of damages recovered by the statutory trustee must be upon the basis of the pecuniary loss of each.' (*Estate of Riccomi et al.,* 185 Cal. 458, 461 [197 Pac. 97, 98, 14 A. L. R. 509].) "

■ In cases of this kind it would seem clear that as the amount of the recovery is the total of the pecuniary loss suffered by each of the heirs, the fact that an heir suffering a pecuniary loss is not a party, directly affects the amount of the recovery. Where, as here, the question of heirship is made an issue by the pleadings, and there is no proof that the plaintiffs are the sole heirs of the deceased, the question of heirship is so intimately related to the amount of the recovery as to constitute a single issue and the new trial should have been granted on both questions. ■ However, on the retrial, evidence was offered to the effect that respondents were the sole heirs of deceased and the trial court so found. Under this state of the record the error was harmless and we cannot reverse the judgment. (Sec. 4½, art. VI, Const.)

■ At the second trial S. C. Rose was permitted to detail statements of the deceased to the effect that her husband and mother, the respondents here, were her sole heirs. Appellants urge that this evidence was hearsay and not competent to support the findings of the trial court. Heirship may be proved by the declaration of a deceased person. (Sec. 1870, subd. 4, Code Civ. Proc.; *Estate of Morgan,* 203 Cal. 569 [265 Pac. 241]; *Estate of McNamara,* 181 Cal. 82 [183 Pac.

552, 7 A. L. R. 313].) Proof of heirship is made by evidence that certain persons are the heirs of a deceased and that they are the only heirs.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.