[L. A. No. 7944. In Bank.—March 18, 1926.]

EMIL RABE et al., Appellants, v. THE WESTERN UNION TELEGRAPH COMPANY (a Corporation) et al., Respondents.

[1] NEGLIGENCE—NONSUIT—INFERENCES — PRESUMPTIONS — EVIDENCE. In considering the sufficiency of the evidence to pass a motion for a nonsuit in an action for damages for the death of plaintiffs' intestate as the result of her having been struck by a bicycle which an employee of the defendant telegraph company was riding and directing while engaged in the discharge of his duties, every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiffs; and where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff; and if contradictory evidence has been given it must be discarded.

[2] ID.—CONSTRUCTION OF EVIDENCE — CONFLICT — VARIANCE — PRIMA FACIE CASE.—On a motion for a nonsuit, the plaintiff must be given the benefit of every piece of evidence which tends to sustain his averments, and such evidence must be weighed in the light most favorable to plaintiff's claim; and evidence, whether erroneously admitted or not, if relevant to the issues joined, must be given the credit and benefit of its full probative strength; and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered; and the evidence must

---

1. See 9 Cal. Jur. 551.

be taken most strongly against the defendant, and if plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of the complaint, the motion, if made upon the close of the case, should be denied.

[3] ID.—PRESUMPTION—BICYCLE WITHOUT LIGHTS—NEGLIGENCE PER SE.—In an action for damages for the death of plaintiffs' intestate as the result of her having been struck by a bicycle which an employee of the defendant telegraph company was riding and directing while engaged in the discharge of his duties, negligence on the part of the deceased cannot be presumed but must be proved; and where the accident happened more than three-quarters of an hour after sunset, and the bicycle of said employee carried neither front nor rear light, nor lamps nor reflex mirror of any kind as required by the provisions of section 13, subdivision (b), of the state Motor Vehicle Act, said employee was guilty of negligence *per se.*

[4] ID.—PROXIMATE CAUSE OF INJURY—PROVINCE OF TRIER OF FACTS—PRESENCE OF STREET LAMPS.—In such action, it is for the trier of facts to say whether, if the law had been observed, the injury would nevertheless have happened, or that the failure to comply with the law did not contribute proximately to the injury; and the fact that certain street lamps in the vicinity sufficiently lighted an area approximately thirty feet or more in circumference did not satisfy the mandate of the Motor Vehicle Act requiring the bicycle to carry a light that would be seen, under ordinary atmospheric conditions, at least a distance of three hundred feet.

[5] ID.—RELATION TO FACTS AND CIRCUMSTANCES—COMPLIANCE WITH STATUTE.—Negligence is relative to a given situation as it exists at the time injuries are inflicted, and it must be considered in relation to the facts and circumstances of the situation, and the determination of the question is not always foreclosed or concluded by compliance with the regulatory statute.

[6] ID.—ACTION FOR DAMAGES—EVIDENCE—PRIMA FACIE CASE—NONSUIT.—In this action for damages for the death of plaintiffs' intestate as the result of her having been struck by a bicycle which an employee of the defendant telegraph company was riding and directing while engaged in the discharge of his duties, although no one appeared who claimed to have seen the bicycle before it struck the deceased, there was sufficient evidence to establish a *prima facie* case of negligence and, therefore, the trial court erred in granting defendants' motion for a nonsuit.

---

3.   See 8 Cal. Jur. 997; 8 R. C. L. 859.
5.   See 19 Cal. Jur. 632.
6.   See 19 Cal. Jur. 739.

[7] ID.—ABSENCE OF PECUNIARY LOSS—JUDGMENT.—In such an action, where two heirs of the decedent, one a son of a deceased son and the other a son of a deceased daughter, did not sustain any substantial pecuniary loss by the death of said decedent, there can be no substantial recovery in favor of either.

[8] ID.—OMISSION OF HEIRS AS PLAINTIFFS—JUDGMENT—SUBSEQUENT ACTION.—Where such an action is maintained upon the authority of section 377 of the Code of Civil Procedure, but certain of the heirs of the deceased are omitted, and the case goes to judgment, the omitted heirs are bound thereby; and the defendants cannot be subjected to a second recovery in a subsequent action by an omitted heir.

[9] ID.—AUTHORITY CONFERRED BY SECTION 377, CODE OF CIVIL PROCEDURE — SINGLE CAUSE OF ACTION — OMISSION OF HEIR — AMENDMENT OF COMPLAINT.—The action permitted under section 377 of the Code of Civil Procedure is statutory and a single cause of action is given and the action should be brought in the names of the persons to whom the right of action is given by the statute; and where an heir, through mistake, misfortune, or neglect, has been omitted as a party from the original complaint, such complaint is subject to amendment to bring in such heir under the same general rules which govern pleadings generally.

[10] ID.—AMENDMENT OF PLEADINGS—LIBERALITY.—Motions to amend pleadings to the end that justice may be promoted are to be liberally granted, and especially should liberality be exercised in favor of allowing the amendment where it would not state a new or different cause of action from that attempted to be stated in the original complaint.

[11] ID.—ADDITION OF PARTIES PLAINTIFF—NEW CAUSE OF ACTION.— Where an action for damages for the death of plaintiffs' intestate is maintained upon the authority of section 377 of the Code of Civil Procedure, an amendment bringing in as plaintiffs certain omitted heirs does not substitute a new and distinct cause of action for the one originally pleaded.

(1) 4 C. J., p. 763, n. 58, p. 764, n. 60, 61, 66.   (2) 4 C. J., p. 764, n. 63, 65, 65 New; 38 Cyc., p. 1553, n. 90, p. 1554, n. 91, p. 1557, n. 21.   (3) 28 Cyc., p. 915, n. 27; 29 Cyc., p. 589, n. 81. (4) 28 Cyc., p. 915, n. 28 New.   (5) 29 Cyc., p. 428, n. 75.   (6) 28 Cyc., p. 917, n. 56 New.   (7) 17 C. J., p. 1207, n. 80.   (8) 17 C. J., p. 1271, n. 75.   (9) 17 C. J., p. 1299, n. 14.   (10) 31 Cyc., p. 367, n. 1.   (11) 17 C. J., p. 1299, n. 19.

7.   See 8 Cal. Jur. 1003.
8.   See 8 Cal. Jur. 991.
9.   See 8 Cal. Jur. 970.
10.   See 21 Cal. Jur. 183; 21 R. C. L. 572.
11.   See 21 Cal. Jur. 198; 8 R. C. L. 819.

APPEAL from an order of the Superior Court of Los Angeles County granting a nonsuit. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

Martin Forrest for Appellants.

Beverly L. Hodghead and Frank R. Stark for Respondents.

SEAWELL, J.—This appeal is taken upon a bill of exceptions from an order granting defendants' motion for a nonsuit. The plaintiffs—being respectively the husband and married daughters of the decedent, Anna Bishop Rabe—joined in the above-entitled action to recover damages for the alleged wrongful death of said Anna Bishop Rabe, which occurred April 22, 1922, as a result of injuries inflicted upon her April 3, 1922, by being struck by a bicycle which one Nick Sanseverino, an employee of the respondent Western Union Telegraph Company, a corporation, was riding and directing while engaged in the discharge of his duties as a deliverer of telegraphic messages for said respondent corporation.

The complaint, which contains an allegation that "the said plaintiffs are the only heirs of said deceased," was drawn, and the action was maintained, upon the authority of section 377 of the Code of Civil Procedure, providing, "When the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if said person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section such damages may be given as under the circumstances of the case may be just."

[1] In our consideration of the evidence as to its sufficiency to pass a motion for a nonsuit, it must be borne in mind that we are required to conform to the well-established rules frequently announced by this court. *Gregg* v. *Western Pacific Ry. Co.*, 193 Cal. 212 [223 Pac. 553], contains

quotations taken from a number of our previous decisions. We quote:

" 'Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff. Where evidence is fairly susceptible of two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If contradictory evidence has been given it must be disregarded. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 253].) [2] The plaintiff must also be given the benefit of every piece of evidence which tends to sustain his averments and such evidence must be weighed in the light most favorable to plaintiff's claim. (*Anderson* v. *Wickliffe,* 178 Cal. 120 [172 Pac. 381].) Evidence whether erroneously admitted or not, if revelant to the issues joined, must be given the credit and benefit of its full probative strength, and any question arising from the fact of variation between the evidence of the witnesses cannot be raised or considered. The evidence must be taken most strongly against the defendant, and if the plaintiff has introduced proof sufficient to make out a *prima facie* case under the allegations of his complaint, the motion, if made upon the close of the case should be denied.' " (*Berger* v. *Lane,* 190 Cal. 443 [213 Pac. 45].) The following citations are appended: *Bush* v. *Wood,* 8 Cal. App. 647 [97 Pac. 709]; *Estate of Daly,* 15 Cal. App. 329 [114 Pac. 787]; *Wassermann* v. *Sloss,* 117 Cal. 425 [59 Am. St. Rep. 209, 38 L. R. A. 176, 49 Pac. 566]; *Hoff* v. *Los Angeles Pacific Co.,* 158 Cal. 596 [112 Pac. 53]; *Lassen* v. *Southern Pac. Co.,* 173 Cal. 71 [159 Pac. 143]; *Kleist* v. *Priem,* 51 Cal. App. 32 [196 Pac. 72].

With the foregoing rules in mind, we proceed to a statement of the facts as disclosed by the record. The decedent was a woman sixty-two years of age and in normal health. She was visited on April 3, 1922, at the home of herself and husband in the city of Los Angeles, by her daughter, Mrs. Alexia Valentine, and the latter's three year old child. The daughter upon taking her departure was accompanied by the mother to the northwest corner of Kohler and Seventh Streets, at which point the former was to board a westbound Kohler Street car and the mother was to return to her home. Seventh Street extends in an easterly and west-

erly direction and Kohler Street extends in a northerly and southerly direction. The latter street does not continue across Seventh on a direct line at its point of entrance from a southerly direction. The easterly boundary line of Kohler Street south of Seventh Street, if projected northerly, in its continuation, would form the westerly boundary line of Kohler Street north of Seventh Street. In other words, the exterior lines of the northerly and southerly sections of Kohler Street, as each enters Seventh Street, are out of line and form what is commonly called a ''jog.'' The mother and daughter, in going from the former's home to the point where the latter was to take the street-car, traveled upon the westerly side of Kohler Street and crossed Seventh Street at an angle to the northwest corner of said street, it being the place where the street-cars discharged and received passengers. The mother, daughter, and child remained upon the sidewalk for some ten or twelve minutes before a car arrived. As it approached the daughter and her said child went into the street to board it. What period of time the mother, who had to recross Seventh Street in order to return to her home, remained upon the sidewalk after the daughter started to board the street-car, was not told by any witness, and it can only be approximated by physical facts and the sequence of events. Mrs. Valentine, who was also accompanied by her child, in crossing from the sidewalk to board the street-car, was ''brushed'' by the passing bicycle shortly before she reached the car. It passed her going at a swift rate of speed and the wheel brushed her dress in passing between her and the sidewalk. Her testimony is that it ''whizzed'' by her as fast as it could go. She was not aware that the mother had been struck or run into by the bicycle until a few seconds later when her child saw the mother lying in the gutter near the north curb line not far from where she had left her standing. The mother was picked up in an unconscious state and did not regain full consciousness at any time thereafter. She sustained a fracture of the skull which resulted in death.

[3] On the evening of the injury the sun set at 6:15. There is evidence in the record which would require us to hold, under the rules above announced, that decedent was struck as late as 7:15. There is no question but that it was later than 7 o'clock. The bicycle carried neither front

nor rear light, nor lamps, nor reflex mirror of any kind as required by the provisions of section 13, subdivision (b) of the state Motor Vehicle Act (Stats. 1919, p. 191), to be carried by a bicycle one-half hour after sunset, and the messenger was clearly guilty of a violation of the mandates of said act in this respect. The meteorologist in the United States Weather Bureau at Los Angeles testified that at the time the injuries were inflicted the sky at and in the vicinity of Los Angeles was entirely overcast with stratus clouds —low clouds. It was not a foggy night so as to obstruct the view of the street if the lamps were burning, but an ordinary cloudy condition prevailed. The deceased when first observed upon the street was approximately thirty feet westerly from the northwest corner of Seventh and Kohler Streets, lying in the gutter near the outer edge of the sidewalk. No negligent act on her part was testified to by anyone nor can such be inferred from any fact or circumstance disclosed by the record. Negligence cannot be presumed but must be proved. On the other hand, the employee and agent of the respondent corporation was guilty of negligence *per se* (*Mora* v. *Favilla*, 186 Cal. 199 [199 Pac. 17] ; *Dewhirst* v. *Leopold*, 194 Cal. 424 [229 Pac. 30]) in failing to comply with those sections of the state Motor Vehicle Act, which provided that "every bicycle while on the public highway shall carry a lighted lamp visible under normal atmospheric conditions at least three hundred feet in the direction towards which such bicycle is faced," etc., within one-half hour after sunset. The absence of a rear light or reflex mirror is not material to the instant case as the failure to comply with the act in that particular could not have been, so far as we are able to discern, responsible for the injury. But the same argument cannot be made in defense of the absence of a light which the law required to be visible at least three hundred feet in the direction in which the bicycle was moving. The law was enacted to prevent the kind of catastrophe which here happened. [4] Who may say, but the triers of fact, that if the law had been observed the injury would nevertheless have happened, or that the failure to comply with the law did not contribute proximately to the injury. There is testimony to the effect that certain street lamps in the vicinity sufficiently lighted an area approximately thirty feet or more

in circumference. The lights of the street lamps did not satisfy the mandate of the law. The statute required a light to be carried that would be seen, under ordinary atmospheric conditions, at least a distance not less than three hundred feet. Besides, a light carried by an automobile or a bicycle has a distinct value to travelers that a street light does not possess. The public is accustomed to determine the safety of a situation with reference to the signal lights which the law requires vehicles to carry. Such warning or signal lights have an attractiveness not possessed by the ordinary overhead light. No one appeared in the instant case who claimed to have seen the bicycle before it struck the decedent, or at least before it "brushed" Mrs. Valentine's clothing in its swift passage. This incident must have been practically simultaneous with the collision of the bicycle with the decedent. It was proper, further, for the jury to consider the question of care exercised by the rider of the bicycle and the rate of speed at which he passed the street-car which had stopped at a regular stopping place where people gathered for the purpose of entering cars and are discharged therefrom. [5] Negligence is relative to a given situation as it exists at the time injuries are inflicted. Negligence must be considered in relation to the facts and circumstances of the situation and the determination of the question is not always foreclosed or concluded by compliance with a regulatory statute. (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 340 [208 Pac. 125].) It was also proper for the jury to consider the agency or instrumentality by which the injury was caused, to wit, an unlighted bicycle, and the ease or difficulty with which it may be discerned upon a street lighted as the evidence shows the street in the instant case to have been lighted and the readiness with which a bicycle may be quickly and suddenly deflected from its course together with other facts pertinent to the inquiry. [6] We are of the opinion that the evidence was sufficient to establish a *prima facie* case of negligence.

The second branch of the case calls for a consideration of the proceedings and the final ruling which followed a motion made by plaintiffs for leave to amend the complaint by bringing in two heirs of the decedent who had been omitted from the action. These omitted heirs were grand-

children, one a son of a deceased son and the other a son of a deceased daughter. The father and mother of said children, respectively, had predeceased Anna Bishop Rabe by many years. Said deceased daughter left surviving a son who had not been heard from for a period of more than four years and none of the other children of decedent or members of the family knew whether or not he was then living. The other heir was in all probability living. Both of said grandchildren of decedent, if living, would have passed their majority at the time of the grandmother's demise. It appears that neither was at any time dependent upon or had at any time enjoyed the bounty of decedent, or had ever been a member of her household. The existence of other heirs than those joined in the action was drawn out on the cross-examination of appellant Alexia Valentine early in the trial. No action whatever was taken or objection made by defendants as to the nonjoinder of said two grandchildren. Some time after the facts had been elicited, as above stated, plaintiffs asked leave to amend by bringing them in as plaintiffs and it was against the granting of their motion that defendants entered their protest. Defendants confined themselves solely to objecting to the motion to bring in said heirs. The court reserved its ruling on the motion until all of plaintiffs' evidence had been put in. It thereupon denied the motion to amend and granted the motion for a nonsuit. The omitted heirs were, according to the rules of consanguinity, one degree further removed from the common ancestor than the surviving daughters and the parents of each of said omitted heirs had been dead for many years prior to the decedent's death and the family contact and association as between the decedent and them had long since become severed. It is not strikingly strange that such an oversight should have occurred. No claim is made that said heirs were fraudulently omitted or that plaintiffs were guilty of bad faith in any sense by reason of said omission. [7] The evidence in the record tends to show that said omitted heirs did not sustain any substantial pecuniary loss by the death of the decedent and if this is so, there could have been no substantial recovery in favor of either. (*In the Matter of the Estate of Riccomi*, 185 Cal. 458 [14 A. L. R. 509, 197 Pac. 97]; *Burk* v. *Arcata etc. Ry. Co.*, 125 Cal. 364 [73 Am. St. Rep. 52, 57 Pac. 1065]; *Simoneau*

v. *Pacific Electric Ry. Co.,* 159 Cal. 494 [115 Pac. 320].)
The denial of a motion to amend a complaint by bringing
in omitted heirs would work an exceptional hardship under
section 377 of the Code of Civil Procedure, inasmuch as
it would in effect deprive a plaintiff who had moved dili-
gently the right to enjoy the benefit of the section if it
should develop that certain heirs for any reason—acci-
dent, misfortune, or mistake, however excusable—had been
omitted as parties to the action in the original complaint,
and the bar of section 340, subdivision 3 of the Code
of Civil Procedure, had run as to said omitted heirs be-
tween the time the action was commenced and the time the
discovery of the neglect or mistake was made.  Such a
denial would be exceptionally disastrous in view of the law
that a recovery in one action is a bar to subsequent actions
by some other heir or heirs of whose existence the plaintiff
had no knowledge at the time the action was instituted.
[8]  This would be inconsistent with the cases which hold
that had the action gone to judgment the omitted heirs
would be bound thereby and the only possible effect of such
omission would be to diminish rather than enhance the de-
fendant's liability for the reason that so far as the heirs
are concerned a single joint action is given.  They could
not be subjected to a second recovery in a subsequent action
by any other heir or heirs.  (*Salmon* v. *Rathjens,* 152 Cal.
290 [92 Pac. 733].)

[9]  Nothing is said in *Salmon* v. *Rathjens, supra,* or in
the other cited cases, which may be taken as an intimation
by this court that an heir, who through mistake, misfortune,
or neglect has been omitted as a party from the original
complaint, cannot, under any circumstances, thereafter be
brought in by amendment.  That case emphasizes, as do
others, the fact that the action permitted under section 377
of the Code of Civil Procedure is statutory and a single cause
of action is given and the action should be brought in the
names of the persons to whom the right of action is given by
the statute.  But in none of the decisions is there an intima-
tion to the effect that a complaint which omits heirs is not
amendable.  Such of our decisions as touch the question at
all take it as a matter of fact that the complaint is subject
to amendment under the same general rules which govern
pleadings generally.  [10]  It is the settled law of this

state that motions to amend pleadings to the end that justice may be promoted are to be liberally granted. Especially should liberality be exercised in favor of allowing the amendment where, as in the instant case, the amendment would not state a new or different cause of action from that attempted to be stated in the original complaint. (*Barr v. Southern California Edison Co.*, 24 Cal. App. 22 [140 Pac. 47].) "Where there is no attempt to state a new cause of action in an amended complaint, but merely the addition of matters essential to make the original cause of action complete, the amendment, though made after the expiration of the period of limitation, relates back to the time of the commencement of the action." (*Ruiz v. Santa Barbara Gas etc. Co.*, 164 Cal. 188 [128 Pac. 330].) No issue would have been changed by the amendment. Defendants would have suffered no prejudice by bringing in the absent heirs as no issue would have been changed thereby. The evidence making it appear necessary to bring in other parties was elicited *by the defendants*. Great liberality is indulged in such cases to the end that justice will be subserved. "This is especially true where evidence has been received without objection, and the amendment is made to conform thereto or where the filing of the amended complaint will save a claim from the bar of the statute of limitations." (21 Cal. Jur. 192.) The testimony in the instant case as to other heirs was brought out by the *defendants* and all that plaintiffs asked was to make the amendment conform to the evidence elicited by them. " . . . when a complete determination of the controversy cannot be had without the presence of other parties, the court must then order them to be brought in, and to that end may order amended and supplemental pleadings, or a cross-complaint to be filed, and summons thereon to be issued and served." (Sec. 389, Code Civ. Proc.) It is unnecessary to illustrate by further citations of authority, or code sections, the spirit of liberality that is to be indulged by courts to the end that there may be a complete and just determination of civil actions.

[11] There is no merit in the contention that the amendment would have substituted a new and distinct cause of action for the one pleaded. This contention has been put at rest by many decisions of this state, a few of which are: *Cox*

v. *San Joaquin Light Co.,* 33 Cal. App. 522 [166 Pac. 578];
*Frost* v. *Witter,* 132 Cal. 421 [84 Am. St. Rep. 53, 64 Pac.
705]; *Barr* v. *Southern California Edison Co.,* 24 Cal. App.
22 [140 Pac. 47]; *Ruiz* v. *Santa Barbara Gas etc. Co., supra.*

For the foregoing reasons, the order granting the nonsuit
is reversed with directions that the plaintiffs be allowed to
amend their complaint by bringing in the omitted heirs,
either as plaintiffs or as defendants, as they may be ad-
vised.

Lawlor, J., Richards, J., Shenk, J., Waste, C. J., and
Curtis, J., concurred.