Plaintiff recovered judgment against defendants for damages sustained by him in a collision between *Page 642 
his automobile and a street-car operated by defendants. The defendants have appealed from the judgment.
The collision occurred on Holt Avenue in the city of Pomona. Holt Avenue runs east and west. There is a single street-car line along the street in the south half thereof. It was stipulated by the parties "that from the south rail of the street car track to the south curb of Holt avenue was 25 feet 6 inches and that the distance from the north rail of said track to the north curb line of Holt avenue is 37 feet, and that it is 5 feet between the rails." On either side of the street, between the curb and the sidewalk, there is a row of large pepper trees. Street-cars are run along the track in both directions. The collision occurred about 9 o'clock in the evening, May 5, 1923. Four automobiles were going east along the south side of the avenue, plaintiff being in the rear, driving a Ford touring car. Ahead of them, coming from the east, was the defendants' street-car. Plaintiff attempted to pass to the left of the automobile ahead of him and in doing so came into collision with the street car. His automobile was wrecked and he was seriously injured. The plaintiff testified: "I had not driven along Holt avenue prior to the collision, but I had crossed Holt avenue. . . . I was traveling between 15 and 18 miles per hour. . . . At that time I did not notice that there was only a single railroad track on Holt avenue. I saw one automobile ahead of me. . . . I was driving directly behind the car that was in front of me. This car was about 6 feet south of the railroad track. Another automobile came along and passed me. . . . It came out on to the street car track and it then passed the car that was in front of me. At this time I gradually came up on the car that was in front and I followed the other car around the car that was in front of me. I was approximately 40 feet behind the car that passed me. It was a Buick . . . touring car and had a top on it. . . . The first time I saw the street car this Buick dodged off the track and there was a light coming rapidly towards me and I tried to get off the street car track but the street car struck me. . . . I attempted to dodge it. . . . I did not know then what it was. . . . The lights on my automobile were burning at the time of the accident. . . . I had been driving several blocks on Holt avenue before the accident, at least three or four blocks. I drove right along by the street *Page 643 
car track. I saw the street car track. When I drove out on to the track to pass the car ahead of me I saw the track then and I supposed it was a railroad or street car track. . . . After I got on the track I drove along the track and I traveled about 75 feet before the collision occurred. . . . I hadn't yet passed the other car that I had been following. I was right up to it. Probably the front end of my car was even with the back end of his (Mitchell's car) at the time of the accident, or probably a little bit further than that. A man named Mitchell was driving the car I was passing. . . . As I traveled on the railroad track I was astride the south rail. . . . The street car was lighted. I saw a light. I suppose it was the headlight I saw. . . . I didn't know cars run on those tracks. . . . I did not see any lights at the top of the street car. I didn't have time to look very much. . . . I did not see the street car before I drove on the track. I did not make any effort to ascertain whether or not a street car was coming before I drove on the track. I didn't expect a street car on that side. I don't remember that I saw the tracks before I drove on. . . . I looked straight ahead and there was an automobile ahead of me. . . . The reason I could not see the street car was because the automobile was immediately ahead of me. The large Buick automobile was ahead of me on the street-car tracks at that time. . . . I did not know it was a single track." G.V. Moser testified that "the street car was going over 30 anyway, not less"; that the plaintiff's automobile was thrown or carried to a point about 80 feet west of the place of the collision; that he measured the distance from the point of collision to the place where the street-car stopped after the collision and that it is 250 feet; that plaintiff "was traveling directly straddle of the south rail"; that the street-car had one headlight and the lights were on inside the car. "They were very dim. They are never very bright. . . . The street car had just one headlight. It was rather dim. The headlight was approximately as high from the street as an automobile light would be." Other witnesses for plaintiff corroborated the testimony given by plaintiff and Moser. One of them gave the distance from the point of the accident to the place where the street-car stopped as 265 to 275 feet. Another witness testified that he was driving west on Holt Avenue at the time of the accident, traveling *Page 644 
at the rate of 23 to 25 miles an hour, when the street-car passed him, and that thereafter he "traveled . . . about 100 feet when the accident happened, and the car had traveled five or six hundred feet while I was traveling 100 feet." While the estimate of this witness is doubtless erroneous, from his testimony, together with that of other witnesses, including the distance the car traveled before coming to a stop, the jury was justified in finding that the street-car was running at an excessive speed.
The motorman, who is one of the defendants, testified: "I was at that time operating a one-man car that was going westerly on Holt avenue at the time of the accident. . . . We had on this car straight air brakes with emergency features. . . . An emergency application of air on the wheels will slide. . . . I realized that an accident was about to take place just as it took place. I was then about twenty feet from the automobile. Prior to that I had been sitting down. I was coasting; the power was off. . . . When I realized there was going to be a collision the first thing I did was to apply the emergency application of the air. . . . I have traveled over that street a good deal. . . . If the automobile turned out at all off the track before the collision it was right at the time of the collision. I noticed automobiles on the street at that time and . . . I think there was about four. There was no automobile between me and Mr. Phillips. He turned right out behind the rear car. I did not see any large touring car in front of him. I was looking straight ahead down the track. . . . I didn't see any automobile turn off in front of Mr. Phillips. . . . I saw some automobiles driving in an easterly direction. . . . They were south of the track. They were following each other. . . . I am positive they were all off the track when I first saw them. I only saw one automobile on the track and that was the plaintiff's. . . . When the car came to a stop the brakes were set. . . . I would say from my experience as a motorman that a street car of that type, going at the rate of 15 miles an hour, under the condition that existed there at that time, after the emergency brakes were applied, would go 80 feet. There were pepper leaves on the track that night. They kept blowing on the track there all the time. I knew that. I had experience prior to that as to what effect they would have on the brakes of the car. I knew it made it *Page 645 
more difficult to stop with the pepper leaves on the track. . . . There was no fog that night. . . . The street is rather dark along there on account of the pepper trees. The pepper trees are so large that they reach clear out into the street so the leaves drop on the track. They extend about half way into the street. . . . I operate along there daily and when there are pepper leaves on the track. . . . The automobiles were going at a moderate rate of speed. . . . I don't know how fast the automobile was going that was in the collision. . . . It was going a little bit faster to be able to try to get around, but it didn't get around. . . . My headlight was burning and the car was lighted inside. There are also two red lights just below the roof, directly in front of and just below the roof. . . . The two red lights on the front of the street car were lighted that night. . . . After the accident I walked back over where the automobile was and saw where I had slid on the rail. . . . I could feel the brakes take hold. They took hold right at the place. Approximately right at the time."
Appellants ask for a reversal of the judgment on two grounds: First, that the evidence does not show that the defendants were guilty of any negligence; second, that the evidence conclusively shows that the plaintiff was guilty of contributory negligence.[1] It is clear from the evidence herein set out that it is sufficient to warrant the inference that, under the circumstances shown, the street-car was running at an excessive rate of speed. It is certainly negligence to run a street-car through a residence section of a city at such a rate of speed that it cannot be brought to a standstill, under known conditions, within a distance short of 250 feet, and the jury may have reasonably inferred from the evidence that but for such excessive speed the plaintiff would have safely passed the automobile ahead of him.
[2] The burden of proving contributory negligence was on the defendants. "It is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown." (Seller v. Market Street Ry. Co.,139 Cal. 268, 271 [72 P. 1006]; Zibbell v. Southern PacificCo., 160 Cal. 237, 241 [116 P. 513]; Reaugh v. CudahyPacking Co., 189 Cal. 335, 343 [208 P. 125]; Rosenbloom v.Southern Pacific Co., 59 Cal.App. 102, 111 [210 P. 53];Wing v. Western Pacific R.R. Co., *Page 646 41 Cal.App. 251, 257 [182 P. 969].) In attempting to pass the automobile ahead of him, plaintiff was at all times on the south half of the street. It is unusual for a single street-car track to be placed so far to one side of the center line of the street as that in question here was placed. The plaintiff did not know that it was a single track line and, therefore, did not expect to meet a street-car traveling west upon it. By reason of that assumption, he did not look for an approaching car. The Buick automobile in front of him hid the street-car from his view. Had there been a double line of tracks in the street, plaintiff's acts would not have been negligent. Under the circumstances disclosed by the evidence it cannot be said, as a matter of law, that the plaintiff was negligent, but the question was one of fact for the jury. The case is somewhat analogous to that ofWing v. Western Pacific R.R. Co., supra. That was an action to recover damages for personal injuries received while crossing a spur-track which was under construction, after having safely crossed the main-tracks of the defendant. The court said: "The reasonable construction of plaintiff's entire testimony is that, while he looked for danger when crossing the main tracks and saw the car standing on the main tracks about six hundred feet from the crossing, he, nevertheless, considered all danger was passed when the main tracks had been crossed, and took no more notice. `I take care of myself, not for the track, because I see I pass through the tracks. I didn't take no more notice.' In other words, he neither regarded the spur-track in its then condition as a sign of danger nor took the precautions which the law would have required of him if it had been such. Did his failure to do so constitute contributory negligence as a matter of law, or was that a question of fact to be determined by the jury? In our opinion, it was the latter."
The judgment is affirmed.
Preston, J., pro tem., and Plummer, J., concurred.
A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 9, 1927. *Page 647