[Civ. No. 4010.   Third Appellate District.—March 8, 1930.]

STATE COMPENSATION INSURANCE FUND et al., Appellants, v. J. A. ALLEN, Respondent.

Ford, Johnson & Bourquin, Frank J. Creede, Thomas W. Slaven and Walter J. O'Connor for Appellants.

Neumiller & Ditz for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a judgment for the defendant following the verdict of a jury, in a suit for damages for personal injuries. The chief controversy arises over the question as to whether the intervener was an invitee or a mere licensee in his use of a runway over an excavation adjoining a building, from which he fell in attempting to cross in the course of his employment.

The defendant was a general contractor to whom the construction of the Union Safe Deposit Bank building at Stockton had been awarded. The intervener, Victor Peterson, was employed as foreman of the steel structure workmen by the Williams Construction Company, a subcontractor of the defendant. The steel frame for the building had been completed. The area reserved for sidewalks adjoining the building had been excavated to be used as an extension of the basement. This space was nine feet wide and twelve feet in depth and was still uncovered. The concrete walks had not yet been laid. For the purpose of conveying a

700-pound circular steel saw into the building the defendant constructed a runway across this open space the night before the accident occurred. It was built by laying four two by ten inch planks which were fourteen feet in length across this open space. ' They were placed at an angle of twenty per cent from a direct line between the walls of the building and a temporary plank walk bordering the excavation on the outer side. There is a conflict of evidence as to whether another plank runway had been used at this same place across the open space prior to the construction of the one which was used to transport the saw into the building. The planks of this runway overlapped the steel girder of the building upon which they rested two or three feet. At the other end of the runway the planks overlapped the sidewalk about a foot and were toenailed to the planks of the walk to prevent them from slipping. Midway beneath this runway upright timbers which were two by six inches in dimension were placed, to which a cross-ledger was spiked to support the planks of the runway. After the saw had been taken into the building the following morning and deposited on the beams of the floor, the workmen immediately commenced to dismantle the runway to use the planks as a platform for the saw. There is evidence to support the assertion that three planks had been removed and that one plank only remained to span the opening. This plank was found in position after the accident had occurred, which was about 11 o'clock A. M. on July 3, 1924. Peterson claims to have used this runway several times that morning for taking materials to and from the building. The defendant testified that he had no knowledge that it was being used by anyone except for the purpose of transporting the saw, which was the only purpose for which it was constructed. At the time of the accident Mr. Peterson threw a heavy coil of rope, blocks and tackle over his shoulder and thus burdened attempted to cross to the building upon this plank. He claims there were then two planks of the runway remaining, and that one of them gave way causing him to fall into the basement. The jury, however, were entitled to assume from the defendant's evidence that there was but one plank left and that this plank remained in proper place after the accident. This left the question to be determined by the jury as to whether the intervener

may not have lost his balance and fallen from the plank into the basement through no fault in the construction or maintenance of the runway. He was precipitated into the excavation and was impaled on a reinforcement rod which extended upward from the concrete wall at the bottom. The bar entered his left leg below the hip and came out through the abdomen near the navel. He was very seriously injured.

The suit was commenced by the State Compensation Insurance Fund in behalf of Peterson and also to recover the hospital and medical fees which it had expended for his treatment. The complaint also charged the defendant with negligence in the construction and maintenance of the runway and prayed for damages for the injuries sustained by Mr. Peterson. A demurrer was overruled, which was urged on the ground of nonjoinder of parties plaintiff and that the State Compensation Insurance Fund lacked jurisdiction to maintain the action so far as damages for the personal injuries of the employee were concerned. At the time of the trial, over the objection of the defendant, Peterson was permitted to file a complaint in intervention. The defendant controverted all the material allegations of the complaint and charged the intervener with contributory negligence.

It is contended by the respondent that since the accident occurred July 3, 1924, and the complaint in intervention was not filed by Victor Peterson, the injured person, until July 23, 1926, his claim for damages was waived by virtue of the statute of limitations as provided by section 340 of the Code of Civil Procedure.

The permission of court granting leave to file the complaint in intervention was harmless since the plaintiff, State Compensation Insurance Fund, by the incurring of obligations and payment of medical and hospital charges in behalf of the insured was subrogated by statute to all the rights of an employer and was authorized to enforce such claims in its own name. (Workmen's Compensation Act, Stats. 1917, p. 831; *Morris* v. *Standard Oil Co.*, 200 Cal. 210 [252 Pac. 605]; *City of Sacramento* v. *Central California Traction Co.*, 78 Cal. App. 215, 222 [248 Pac. 307].) Section 30, subdivision F, of the Workmen's Compensation Act, provides:

"Where any employer is insured against liability for compensation with any insurance carrier and such insurance carrier shall have assumed the liability of the employer therefor . . . or shall have paid any compensation for which the employer is liable, or furnished or provided any medical services required by this act, such insurance carrier shall be subrogated to all the rights and duties of such employer *and may enforce any such rights of its own name.*"

The intervener was therefore not a necessary party to the action. The complaint was filed by the State Compensation Insurance Fund within the statutory limitation period of one year from the time when the injuries were sustained by the insured, and contained all the necessary allegations upon which the intervener's claim was founded. The complaint in intervention presented no new issues and was therefore entitled to be filed at any time prior to trial. (Sec. 387, Code Civ. Proc.; 16 Cal. Jur. 544, sec. 141; *Rabe* v. *Western Union Tel. Co.,* 198 Cal. 290, 299 [244 Pac. 1077].)

The record contains evidence which may be held to support an implied finding of the jury to the effect that the intervener was guilty of contributory negligence in venturing upon a single plank laden as he was with a cumbersome burden of heavy rope and tackle.

The appellants assert that in passing over the runway to the building upon a mission incident to his employment, the intervener was an invitee of the defendant who owed him the duty to exercise ordinary care in the construction and maintenance of the runway. Upon the contrary the defendant asserts that the intervener as the employee of a subcontractor was a mere licensee in the use of this runway which was constructed for the sole purpose of transporting the saw into the building, and that he therefore owed him no duty except to refrain from wilfully or wantonly injuring him, or from laying a dangerous trap which would expose the intervener to great peril. The defendant claims that although the intervener may have been an invitee with relation to his occupation in other parts of the building or upon other approaches thereto, still he was a mere licensee in the use of this particular runway which was constructed only for the conveyance of the saw into the building.

The problem as to whether the intervener was using this particular runway as a licensee or as an invitee presents rather a close question of fact. The implied finding of the jury, however, to the effect that he was a mere licensee finds support in the record and must, therefore, be sustained.

Two instructions upon the subject of licensee and invitee were given to the jury at the request of the defendant, which are challenged as erroneous. They are in the following language:

(1) "If you find from a preponderance of the evidence that Victor Peterson was a mere licensee at the time he is alleged to have been on the alleged runway, then you are instructed that he took upon himself the risk of the alleged runway as he found it, and the defendant owed him no duty of seeing that the alleged runway was safe for his attempted use, and your verdict should be for the defendant."

(2) "If you find from a preponderance of the evidence that Victor Peterson was an invitee on the premises under the control of the defendant, but that the invitation did not extend to the use of the alleged runway, then you are instructed that said Victor Peterson was a mere licensee at the time he is alleged to have been on the alleged runway, and the defendant owed him no duty of seeing that the alleged runway was safe for his attempted use, and your verdict should be for the defendant."

It is asserted that the foregoing instructions invade the province of the jury by virtually assuming that the intervener was a mere licensee while the evidence conclusively establishes the fact that he was in fact an invitee.

Obviously, this criticism is not merited. Each instruction is based upon the express condition that the jury shall first find from a preponderance of the evidence that Mr. Peterson was either an invitee or a licensee. The determination of his relationship toward the defendant was left entirely with the jury. Moreover, these instructions should be construed with relation to the three following instructions, two of which were given at the request of the plaintiffs and which adequately apply the doctrine of the law respecting the liability of an employer toward a licensee or an invitee as contended for by the appellants:

(3) "If you believe from the evidence that Victor Peterson used the runway on July 3, 1924, and at the time he fell, at the invitation, express or implied, of the defendant, then I instruct you that as a matter of law Victor Peterson was an invitee and had a right to use said runway. And in that event if you believe that the said runway gave way and as a proximate result of any negligence on the part of the defendant or any of his servants or employees acting within the scope of their employment, your verdict should be for the plaintiff unless it has been proven that Victor Peterson himself was guilty of negligence which was a proximate cause of his injury."

(4) "It is not necessary in this case that there should have been an express invitation by the defendant to Victor Peterson to use said runway; circumstances themselves may be sufficient to imply such an invitation. For invitation, as the law construes it, may be either express or implied."

(5) "It is admitted in this case that Victor Peterson was an employee of J. G. Williams Construction Company, and not of defendant J. A. Allen, and that said J. A. Allen was under no contractual duty by any contract to construct, secure and support any runway for said Victor Peterson, and you must, before you can find for the plaintiff and against the defendant, find, from a preponderance of the evidence, that there was an invitation, either express or implied, extended by said J. A. Allen to said Victor Peterson to use said runway as a walkway, and if no such invitation were extended, then you are instructed that said Victor Peterson was a mere licensee at the time he is alleged to have been on said alleged runway, and said J. A. Allen owed him no duty of seeing that said alleged runway was safe for his attempted use."

Instruction number 4 informs the jury that an invitation to use a particular runway may be either express or implied from the surrounding circumstances. Number 3 declared that if he used the runway at the invitation of the defendant either express or implied and was thereby injured as a result of the negligence of the defendant or his employees, he was entitled to recover damages. ██ The instruction last above quoted correctly states that as an employee of the Williams Construction Company, the defendant was not obligated to provide the intervener with a runway upon

which to enter the building, and that unless the jury should find that Peterson was invited by the defendant, either expressly or by implication, to use the runway, he would be a mere licensee in such use, under which circumstances the defendant would be under no obligation to see that it was safe and secure.

The appellants insist that this application of the law is erroneous; that when an employee is actually engaged in the performance of his work, it is inconsistent to say that he may still be acting as a mere licensee. The authorities which are cited upon this subject will not sustain that conclusion. Obviously, the relationship of licensee or invitee must depend upon the nature of the employment and the circumstances under which the service is performed. In the present case the intervener was not an employee of the defendant. The runway was not constructed for the use of workmen in general who were employed upon the building. It was for the exclusive purpose of conveying the saw into the structure. After the object for its construction had been accomplished, the defendant's employees immediately proceeded to dismantle it. The defendant was not aware that Peterson was making use of it as a convenient way to go and come from the building. Peterson knew why it was constructed. He knew that it was being dismantled. He did not ask for permission to use it. It may not be said that it had been used so long or commonly as to imply an invitation or acquiescence in its use. While undoubtedly Mr. Peterson as foreman for the Williams Construction Company had a lawful right to the use of the building and other approaches thereto necessary for the reasonable performance of his duties, the jury were authorized to find from all the facts of the case that as between himself and the defendant he was a mere licensee in the use of this particular runway.

It is, of course, true that even though the intervener was a mere licensee upon the runway at the time he was injured, still the defendant would be liable for conduct which would result in wilfully or intentionally inflicting the injuries. An owner of property may not construct a device which will become a trap or expose even a mere licensee or trespasser to great peril, without liability. As Mr. Justice Harlan well said in the case of *Bennett* v. *Louis-*

*ville etc. Ry. Co.,* 102 U. S. 577 [26 L. Ed. 235], "The owner is liable to invited guests for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation." (20 R. C. L. 56, sec. 52.)

In the present case it is not contended, and the evidence will not support the assertion, that the defendant maintained a trap at the peril of employees, or that he wilfully, wantonly or knowingly built or maintained a runway to injure the intervener or anyone else.

The doctrine is well established that except for wilful and wanton injury, the owner or one in control of property is not liable for injuries sustained by a mere licensee or trespasser. (*Means* v. *Southern Cal. Ry. Co.,* 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001]; *Jacobson* v. *Northwestern Pac. Ry. Co.,* 175 Cal. 468, 472 [166 Pac. 3]; *Lucas* v. *Walker,* 22 Cal. App. 296, 301 [174 Pac. 374, 379]; 45 C. J. 796, sec. 201; 20 R. C. L. 57, sec. 53; 2 Shearman & Redfield on Negligence, p. 1220, sec. 705; Thompson on Negligence, sec. 685.)

Error is charged in the refusal to give plaintiff's instructions 9 and 10. ■ The first charged the jury that a contractor is bound to use ordinary care in the construction of a runway to render it safe for the purpose for which it was intended, and that if the jury found this particular runway was permitted to remain after the saw had been deposited in the building, with the intention that it should thereafter be used by the workmen generally as a runway to the building, the defendant would be liable for negligence in its construction and maintenance. ■ The second instruction informed the jury that even though Mr. Peterson could safely enter the building by means of ladders or runways other than the one upon which he was injured, that privilege would not necessarily preclude him from the right to also use this saw-runway, and if the jury found *that his use of the latter runway was contemplated* and reasonably necessary for the performance of his work, the defendant would be liable for negligence in its construction or maintenance. These instructions embrace correct statements of the law.

The refusal to give these instructions, however, was not error for the reason that they were amply covered by others. For instance, the jury was charged that: "If you believe . . . that the use of the runway by Victor Peterson . . . was a use thereof contemplated by the defendant . . . and that his fall was proximately caused by the failure . . . to exercise ordinary care to make said runway safe and suitable for such use . . . you must return a verdict in favor of plaintiff."

The jury were also charged: "Although toward an employee of his subcontractor a general contractor is not obligated to exercise ordinary care in the construction of runways, the use of which is merely convenient to the employee of such subcontractor, the general contractor is, however, bound to exercise ordinary care to make runways safe and suitable for the use of employees of such subcontractor whose use thereof is contemplated and reasonably necessary to the performance of the work. . . . If you believe . . . that the use of said runway by Victor Peterson . . . was a use thereof contemplated by the defendant," it was the duty of the defendant to use ordinary care to safely construct and maintain the runway.

Other instructions which were given substantially cover the same principles. ██ The jury were clearly informed that although a general contractor was not ordinarily liable for a lack of care in the construction or maintenance of runways or appliances not intended for the use or benefit of the subcontractor or his workmen, still if the general contractor knew they were likely to be so used, he would be liable for injuries sustained through a lack of ordinary care, even to a licensee who had no absolute invitation or right to use the same. This was as favorable a declaration of the law as the appellants were entitled to. In *Pettyjohn & Sons* v. *Basham*, 126 Va. 72 [38 A. L. R. 391, 100 S. E. 813], the court said: "In order for the plaintiff to occupy the position of an invitee, it must appear that the use was not merely convenient, but reasonably necessary for the work to be done."

And in the case of *Bottum's Admr.* v. *Hawks*, 84 Vt. 370 [Ann. Cas. 1913A, 1025, 35 L. R. A. (N. S.) 440, 79 Atl. 858, 864], it is said: "Neither silence, acquiescence nor permission . . . standing alone, is sufficient to establish an

invitation. A license may thus be created, but not an invitation.''

In the Pettyjohn case, *supra*, the facts were quite similar to those of the present case. The opinion in that case aptly distinguishes between an invitee and a mere licensee. Basham was a plumber who was working for a subcontractor of Pettyjohn in the construction of a house. The latter had erected a scaffolding on the outer wall of the building for the purpose of encasing the window frames in the gable. This work had been completed. The scaffolding was permitted to remain in place. To complete his work of plumbing, Basham climbed on to this scaffolding through the gable window and proceeded to the end thereof with the object of reaching the roof. He stepped upon the ends of some loose timbers which gave way and he fell to the ground, sustaining severe injuries. A judgment, which was recovered by Basham in the trial court, was reversed on appeal on the ground that he was a mere licensee on the scaffolding toward whom the general contractor ordinarily owed no duty to exercise care. The court said: ''If Basham was a mere licensee, then he took upon himself the risk of the scaffold as he found it, and cannot recover; but if he was an invitee, and the invitation extended to the use of the scaffold, then Pettyjohn & Sons are liable to him for the injury sustained in consequence of his fall. . . . Usually an invitation will be inferred when the visit is of common interest or mutual advantage to the parties, while a license will be inferred where the object is the mere pleasure or benefit of the visitor. . . . In the case at bar, the evidence fails to show that the use of the scaffold by Basham for getting upon the roof was for the common interest and mutual benefit of both parties. It was built for use in doing work on the face of the gable, and was never intended to be used as a means of access to the roof. . . . If the scaffold was attractive, the plaintiff was not a child, and temptation was not invitation. If simply convenient, the use of it was as a licensee, and not as an invitee. . . . In order for the plaintiff to occupy the position of invitee it must appear that the use was not merely convenient, but reasonably necessary for the work to be done. Mere convenience is not invitation. . . . The fact that access by way of the scaffold was 'easy and convenient' did not

warrant the implication of an invitation to so use it, when another means of access existed that was perfectly safe, easy and convenient.''

It is well settled law and in accordance with reason that one may be an invitee upon particular premises for a specific purpose and yet become a mere licensee with respect to certain parts of the premises, approaches to it, or appliances contained within it, which were not intended for the use of the visitor. (*Powers* v. *Raymond*, 197 Cal. 126 [239 Pac. 1069]; *Kennedy* v. *Chase*, 119 Cal. 337 [63 Am. St. Rep. 153, 52 Pac. 33]; *Peebles* v. *Exchange Bldg. Co.*, 15 Fed. (2d) 335; *Lindholm* v. *Northwestern Pac. R. R. Co.*, 79 Cal. App. 34, 39 [248 Pac. 1033]; 45 C. J. 830, sec. 240.)

The court did not err in instructing the jury that certain specific facts standing ''alone'' would not constitute an invitation for Peterson to use the runway. Customary and general use of a runway for a long period of time might reasonably imply knowledge thereof or acquiescence on the part of the one in control of it. In the present case, however, there was no evidence of general or continued use of this particular runway. The most that can be said is that Peterson used it several times the morning of the accident, without the knowledge of the defendant. This use will not constitute invitation.

After a careful examination of all the instructions given and refused, we find no reversible error and we are satisfied that the jury were very fully and fairly charged as to the essential issues involved. The fact that the evidence would have supported a contrary judgment is not a matter for this court to consider, since it is concluded by the verdict of the jury which possessed the sole province of passing upon the weight and sufficiency of the testimony.

Nor do we think the court erred in sustaining defendant's objection to plaintiff's effort to prove that a general custom existed in California for all workmen engaged in the construction of a steel frame building to indiscriminately use a runway communicating therewith, regardless of the class of employees to which they belong. The general custom of workmen to use a common runway communicating with a steel structure in the process of building, will in no way aid in determining whether an employee of an

entirely different contractor has a right to use a special runway which was constructed for a particular purpose, or to decide whether the injured party acted as an invitee or a mere licensee in his use thereof.

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 7, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 5, 1930.