[L. A. No. 10360. In Bank.—December 29, 1930.]

CATHERINE GILMORE, Respondent, v. LOS ANGELES RAILWAY CORPORATION, Appellant.

Gibson, Dunn & Crutcher, Norman S. Sterry and Philip C. Sterry for Appellant.

Newlin & Ashburn for Respondent.

PRESTON, J.—After a careful reconsideration of this case, we reassert the conclusion heretofore announced in the opinion by Mr. Justice Shenk and the major portion of said opinion is hereby adopted as a portion of this opinion as follows, to wit:

"This appeal is from a judgment on a verdict in favor of the plaintiff in the sum of $7,500 in an action for damages on account of the death of Charles T. Gilmore, the husband of the plaintiff, alleged to have been caused by the negligence of the defendant Railway Company, the appellant herein.

"The deceased met his death when a street car operated by the Railway Company struck him at a point near the intersection of Western avenue and Council street in the city of Los Angeles. It is conceded that the evidence on the issue of the defendant's negligence is conflicting. Contributory negligence is charged against the deceased, which, it is claimed, constituted negligence as matter of law.

"Council street runs into Western avenue (a north and south street) from the west. The plaintiff and her husband had their home on Western avenue and if Council street extended easterly from Western avenue it would pass through a portion of their home place. On the evening of February 12, 1924, the plaintiff and her husband left their home together, intending to go to the Wilshire Theatre. They proceeded down their driveway to a point near the easterly curb line of Western avenue and opposite Council street. Automobiles were parked along the curb on either side of their driveway. They paused at this point to permit three or four automobiles running northerly to pass. The deceased saw a car of the defendant company approaching Council street from the north on the westerly track. Council street was a regular stop for the defendant company's cars. The two then started to cross Western avenue. The plaintiff stopped, but deceased proceeded ahead of her across Western avenue. The deceased apparently walked rapidly to escape a northbound automobile. As he reached the westerly rail of the southbound track he was hit by the right front corner of the appellant's car, was thrown to the street and

expired a few moments thereafter. The appellant's car did not ·stop at Council street, but increased its speed across the intersection and stopped about 200 feet from where the deceased was hit. The foregoing was established by the testimony of the plaintiff. Other evidence tended to prove that the deceased was south of the south line of Council street proceeding easterly when he was struck, but this evidence raised a conflict for the jury to weigh and determine.

■ It is true that the deceased assumed a degree of risk in crossing the street· ahead of. the street car, but he had a right to do so. The test is whether a reasonably prudent man would accept the hazard under the particular facts and circumstances in evidence. (*Ross* v. *San Francisco-Oakland T. R. Co.,* 47 Cal. App. 753 [191 Pac. 703].) ■ The weighing of the probabilities and of the conflicting inferences is ordinarily for the trial court and jury and not for the reviewing court. (*Hatzakorzian* v. *Rucker-Fuller Desk Co.,* 197 Cal. 82, 95 [41 A. L. R. 1027, 239 Pac. 409].) ■ From the record in this case it cannot be said that an honest difference of opinion between men of average intelligence might not exist. 'The burden of proving contributory negligence was on the defendant. "It is very rare that a set of circumstances is presented which enables a court to say as a matter of law, that negligence has been shown."' (*Phillips* v. *Pacific Elec. Ry. Co.,* 80 Cal. App. 641, 645 [252 Pac. 628], and cases cited.)

■ "The appellant complains of certain instructions. First, it contends that the court should have given certain requested instructions defining the doctrine of last clear chance. But there is nothing in the record to indicate that last clear chance was an issue nor was such an issue presented to the jury by the instructions. The requested instructions were therefore properly refused.

■ "Next, the appellant complains of an instruction wherein the court stated to the jury that, if it should find that Mr. Gilmore was crossing at the intersection the rules of ordinary care applicable to street intersections would govern his conduct and any instruction given with reference to any special degree of care required of one crossing a public street between intersections must be disregarded, provided the jury finds that Mr. Gilmore was crossing at said inter-

section. The appellant contends, in view of the conflict in the evidence as to whether Mr. Gilmore crossed directly at the intersection or south of it, that the instruction is prejudicially erroneous and misleading in that it told the jury, so it is claimed, that a less degree of care was required of a pedestrian at street intersections than when crossing between intersections, the law being that ordinary care under the circumstances is the measure at all times. But, inasmuch as the instruction standing alone seemingly charged the jury that more than the required degree of ordinary care should be exercised between intersections, we fail to see how the instruction was anything but favorable to the appellant. The instructions elsewhere directed the jury emphatically and correctly that the decedent was required 'during the entire crossing of the street to exercise the care and caution that a reasonably prudent and careful man in the same or similar circumstances would exercise . . . regardless of whether he was crossing in the middle of the block or at the regular crossing place for pedestrians at the intersection of Council street. . . . '

"The appellant next contends that an instruction which stated that a pedestrian had a right to expect that persons operating street cars and other vehicles would so operate them at the customary speed and give the usual warnings and signals, is prejudicially erroneous when, as it is claimed, there was no evidence of the customary speed of cars at that intersection, and when there was evidence that the decedent knew of the approach of the car, in which event the omission of a signal would not constitute negligence. There is, however, the testimony of the appellant's witnesses that the street car was being operated at its usual rate of speed and that its speed at the time was twelve to fifteen miles an hour. In addition the court instructed the jury at the request of the appellant that if it believed that the decedent actually saw and knew of the approach of the car, then whether the bell was rung or was not rung was immaterial. The error in the instruction complained of is not disclosed.

"Nor do we find any error in the instruction that the 'wife is entitled to the support of her husband regardless of her own financial circumstances'. That the measure

of damages is the pecuniary loss suffered by the wife by the deprivation of her legally enforceable right of support, irrespective of the question of her dependence on the decedent, evidence as to which is inadmissible, is well settled. (See *Shebley* v. *Peters,* 53 Cal. App. 288 [200 Pac. 364]; *Powers* v. *Sutherland etc. Co.,* 190 Cal. 487 [213 Pac. 494].)"

A spirited and able discussion is indulged in by counsel of certain instructions concerning the measure of damages applicable to the case. The question raised is easily grasped from the following portion of one of the instructions: "If your verdict is for the plaintiff it must be for such a sum as will fairly and fully compensate her and each of decedent's daughters for the pecuniary loss, *if any,* which you may find each of them to have sustained by the death of the said Charles T. Gilmore. In determining that amount you may consider not only the loss of the support, *if any,* which he gave to each or any of them, but also the loss of society, comfort and care, *if any,* which the plaintiff *or any* of said daughters have sustained by reason of his death, and you may consider not only the loss of the support, comfort and care which the plaintiff *or any* of said daughters would have been legally entitled to receive from said Charles T. Gilmore had he lived, but also the support, comfort and care which you may find them, *or any* of them, could reasonably expect to receive from the deceased had he lived. . . . . "

Appellant insists that in view of the issue framed by the pleadings, prejudicial error has resulted from these instructions, which authorized the jury to give, if so advised, substantial damages to the nonparticipating heirs at law of the decedent. In this connection, we pause to note that the widow alone is the designated plaintiff. The other heirs at law are three daughters, one of whom is a nonresident of the state. These heirs were named as defendants in the action, but so far as is known were not served with process. ■ The executor of the estate of decedent was so served and later defaulted. Although authorized by section 377 of the Code of Civil Procedure to sue on behalf of the heirs of decedent in a case like the present one, we know of no authority for the contention that by his default any rights of the heirs not served are prejudiced. This follows because although he is authorized to sue, he is not compelled to do

so and the independent right of action given by the statute is in nowise dependent upon whether he does or does not exercise the power given him. (*Ruiz* v. *Santa Barbara G. etc. Co.*, 164 Cal. 188 [128 Pac. 330].)

We thus have before us a complaint which avers the heirship of both plaintiff and the three daughters of decedent. We find also that the widow as plaintiff sues upon the whole of the cause of action given by the code section. It is also true that she prays for judgment upon the whole cause of action and supplements this with a prayer for a partition or distribution of the lump sum which may be awarded therein. No objection was or is made that a defect in parties existed because of failure to serve process on the alleged nonconsenting heirs.

The anomaly in the situation arises because in the complaint it is alleged that the daughters of decedent suffered no pecuniary injury by reason of his death. This, it is strongly urged, put the daughters out of the case and so reduced and confined the issue to the loss suffered by the plaintiff alone and that in view of such fact, the instructions as given necessarily encouraged the jury to go far afield and give substantial damages outside the issue thus tendered by the pleadings. As authority for this contention appellant rests heavily upon the case of *Massachusetts Bonding etc. Co.* v. *Los Angeles Ry. Corp.*, 182 Cal. 781 [190 Pac. 161]. But this argument overlooks the fact that, as above noted, the complaint does not purport to restrain or limit the cause of action given by the statute but on the contrary purports to sue to collect the whole of the same. ■ It has been many times held in this state that the cause of action is a joint one, a single one and an indivisible one. (*Salmons* v. *Rathjens*, 152 Cal. 290, 294 [92 Pac. 733]; *Estate of Riccomi*, 185 Cal. 458 [14 A. L. R. 509, 197 Pac. 97]; *Rabe* v. *Western Union Tel. Co.*, 198 Cal. 290, 299 [244 Pac. 1077].)

■ The allegation of the complaint that no injury has resulted to the nonparticipating heirs by reason of the death of their father, tendered, as to defendant, no issue so long as it is understood that plaintiff is suing upon the one cause of action as a whole. This allegation concerns the defendant only as to the amount of the recovery. The complaint discloses the existence of other heirs and prays that their

rights be adjudicated. Had these heirs appeared in this action they could not have altered the issue founded upon the alleged negligence of the defendant. In the trial here being reviewed there was no place for litigation between the heirs themselves as to the strength of their relative claims and the amount that might be awarded each of them. Such a contest would follow the granting of a lump sum award. Again, if these heirs had appeared they could have gone no further than either to join with the plaintiff in the cause of action or to disclaim any benefit under the same. The true fact is that the complaint in reality tendered the issue involved not only on behalf of plaintiff but on behalf of defendant heirs as well. The heirs named as defendants, in other words, are in reality plaintiffs in the case. (*Donahoe* v. *Wooster,* 163 Cal. 114 [124 Pac. 730] ; 20 Cal. Jur., sec. 14, p. 499.)

With this situation before us, it is readily seen that the question is narrowed down to whether or not the insertion of the allegation of no damages above referred to, misled the defendant to its prejudice. It should first be noted that by this action all of the heirs of decedent are foreclosed from further recovery. (*Salmon* v. *Rathjens, supra; Rabe* v. *Western Union, supra.*) By reason of this fact, defendant is protected against a claim by these non-participating heirs.

Again, a reference to the answer shows that the existence of the heirs, here made defendants, was admitted and upon information and belief it was asserted that the heirs named were not the sole heirs. In the answer also may be found allegations upon information and belief that the reason these nonconsenting heirs did not join with the plaintiff was that they realized no actionable negligence could be shown against the appellant. Again, on the trial it was shown that these parties were children of the decedent and while it was shown that decedent did not contribute to their support, there was no showing that the cordial and affectionate relationship usually existing between parent and child did not exist as to them. Loss of comfort, protection and society is a proper element of injury and is by no means to be classed as compensable by merely nominal damages. Thus it is plain that defendant was not misled or injured by said allegation.

The instructions complained of carried the rights of the widow and children along together but in the disjunctive where necessary for the individual consideration of their claims, and we can see no error in giving them in that form. If pecuniary loss or loss of support was not shown as to certain of the heirs, it is to be presumed that no award was made in that behalf. The instructions in mentioning the various heirs, carried their rights together, as above stated, and the words, ''if any,'' were frequently inserted, thus showing that the court placed before the jury only such matters as the evidence warranted and kept the jury within the proper limits.

In the Massachusetts Bonding Company case, *supra*, the complaint tendered and the answer accepted as the sole issue a part only of the statutory cause of action. In other words, by tacit consent of the parties, the cause of action was split and limited alone to the damages suffered by the widow, the defendant accepting such restriction of the issue with knowledge of the existence of other heirs. In view of this fact it was in that case beyond the realm of the cause to instruct the jury that substantial damages could be given to the nonparticipating heirs. But, as above noted, in the complaint before us, the pleader tendered the whole issue under the code, including the rights not only of plaintiff but of all the other heirs as well, and this situation distinguishes the case above discussed and makes appropriate the instructions which were here given.

Finally, appellant claims the damages were excessive. Even in view of the decedent's age, which was seventy-nine in the month of December preceding the accident, we cannot say that the record discloses that the verdict was provoked by or was the result of passion, prejudice or corruption on the part of the jury. The oral testimony and the photographs in evidence, taken shortly before his death, show that the decedent was an extraordinarily rugged and healthy man for his age and that he had the appearance of a man much younger in years.

The judgment is affirmed.

Shenk, J., Richards, J., Seawell, J., Curtis, J., Waste, C. J., and Langdon, J., concurred.